MATHEWS, Justice.
This is an appeal from a final decree of the Circuit Court of Leon County in a suit for a declaratory decree brought by the appellant against the appellee.
The appellant is an association of cab owners. The rules and regulations of the appellee purports to require the individual taxicab owners, rather than the Association, to secure licenses, pursuant to Chapter 323, F.S., F.S.A., for the operation of taxicabs outside the limits of municipal corporations. The Association contended that it had the right and was willing and able to purchase a master permit but that the appellee refused to issue the same, based upon its construction of Chapter 323, F.S. and Section 5 of the Rules and Regulations of the appellee embodied in Order No. 2494.
The suit was brought by the Association alleging a dispute of rights arising under the Statute and the Rules above mentioned, and praying that the Chancellor construe, determine and declare the meaning and effect of the words of the Rule, as follows:
“ * * * a master permit shall be issued only to the owner of the taxicab, unless it shall be shown to the satisfaction of the Commission that the owner of said taxicab will in no way be connected with the operation thereof, in which event said permit will be issued to the individual or the company actually operating said taxicab. * * * ” (Emphasis supplied.)
It appears from the record that the person to whom a master permit is issued must pay $25 for such master permit, together with the sum of $5 for each taxicab registered under said permit. It is claimed by the appellee that each oivner of a taxicab who is a member of the Association should *595 obtain a master permit and that no master permit should be issued to the Association because it is not the owner of such taxicabs.
It appears from the record that the parties stipulated that the facts were as stated in the complaint, answer, interrogatories and answers thereto, and affidavits, which may be summarized as follows:
“The appellant is a cooperative association composed of thirty-five (35) Members who have associated themselves together, pursuant to the laws of this State, for the purpose of engaging in the transportation of persons for compensation over the public highways of this State.
“The Members of the Association each own from one to three taxicabs. Each Member is under the direct supervision and control of the Association’s General Manager and Board of Directors. The Board of Directors of the Association has the power to discipline, suspend or dismiss any Member; the General Manager of the Association, or its Board of Directors prescribes the standard of mechanical condition which the taxicabs must meet to operate. It also prescribes the color scheme and any advertisements used on said taxicabs, the hours that a taxicab might be operated in any given twenty-four hour period, the routes, the stops, the loading of passengers, and the fares that may be charged. The General Manager does the hiring, disciplining and dismissing of all drivers. (The sole evidence of ownership left in the Members over their taxicabs is the right to disapprove of a driver assigned to his taxicab.) The General Manager directs where the gas and oil for the taxicabs must be purchased. The Liability Insurance on all taxicabs operated under the Association's name is carried in the name of the Association. The Association requires all taxicabs to be late model automobiles and if the Association deems it necessary, it may require a Member to replace his taxicab with a new model. Failure to comply with any of the policies, rules, or regulations of the Association as outlined above, means disciplinary action toward the Member and possibly ousted from the Association.” (Emphasis supplied.)
The Final Decree contained the following conclusion:
“An analysis of the facts as stated above, and elaborated in the record, leads to the conclusion that the business of operating these taxicabs is the business of each owner.”
The Court then held that it was the duty of the individual owners of the taxicabs, rather than1 the Association, to secure the master permit.
We cannot agree with the conclusions reached by the Chancellor.
Subsection 7 of Section 323.01, F.S., F. S.A., defines a transportation company to mean all persons “owning, controlling, operating, or managing any motor propelled vehicle * * (Emphasis supplied.)
Paragraph (c) of Subsection 7 of Section 323.01, F.S., F.S.A., provides:
“Every such person owning, leasing, using or exercising dominion over motor vehicles operated in the transportation of persons or property over public highways ‘for hire’ * *
The Statute is in the disjunctive. Ownership is not the only criterion. “Controlling, operating, or managing” are of equal dignity with the word “owning.” The regulation of the transportation company appears to be the dominant thought and objective of the legislation and the words “using or exercising dominion over motor vehicles” plainly shows that the purpose of the Act was to regulate and control the person, or persons, controlling, operating, managing, using or exercising dominion over such motor vehicles.
It is true that Section 323.05, F.S., F.S.A., provides that the permit so issued shall subject the applicant to the Rules and Regulations of the Commission respecting the “operation of such motor vehicle over state highways”, but it does not subject the applicant to any legislation by the Commission or any rule or regulation not with *596 in the confines of the authority granted by the Legislature or which may be in conflict with legislation on the subject.
Section 5 of Rule 2 of the Order of the appellee, known as Order No. 2494, provides :
“A Master Permit shall be issued only to the owner of the taxicab, unless it shall be * * (Emphasis supplied.)
' This rule is in direct conflict with the Statute, that is, Subsection 7 of Section 323.01, F.S., F.S.A., because said section authorizes the issuance of such master permit, not only to those owning a motor vehicle, but also to those controlling, operating, managing, using or exercising dominion over such vehicles.-
In the case of Atlantic Coast Line R. Co. v. Mack, Fla., 57 So.2d 447, on page 452 of the text, we held:
“ * * * The Commission has no more power to make the change or amend the law, by the adoption of rule- or regulation, than the Court has.
******
“The Florida Railroad & Public Utilities Commission does not have the power to include in a certificate of public convenience and necessity issued to a railroad company under the Section in question restrictions other and beyond those specifically set forth in the said section.”
The adoption of a rule limiting the issuance of a master permit only to those who own a motor vehicle would in effect amend the law, subsection 7 of Section 323.01, F.S., F.S.A., which authorizes the issuance of such permit not only to those owning such a motor vehicle but also to those controlling, operating, managing, using or exercising dominion over such motor vehicles. The Commission may make rules and regulations within the yardstick prescribed by the Legislature, but it cannot amend, repeal or modify an Act of the Legislature by the adoption of such rules and regulations.
Reversed.
ROBERTS, C. J., and TERRELL and SEBRING, JJ-, concur.