167 So.2d 577 (1964)
PEOPLES GAS SYSTEM, INC., a Florida corporation, Appellant,
v.
CITY GAS COMPANY, a Florida corporation, Appellee.
No. 63-568.
District Court of Appeal of Florida. Third District.
September 2, 1964.
Rehearing Denied October 14, 1964.
*578 Scott, McCarthy, Preston & Steel and George W. Wright, Jr., Miami, McClain, Cason & Turbiville, Tampa, for appellant.
Dubbin, Schiff, Berkman & Dubbin, Ward & Ward, Miami, for appellee.
Edgar H. Dunn, Jr., St. Petersburg, Erskine W. Landis, DeLand, amici curiae.
Before HORTON, TILLMAN PEARSON and HENDRY, JJ.
TILLMAN PEARSON, Judge.
The final decree which is appealed held a territorial service area agreement, defining the areas in which two gas utility companies should sell natural gas in Dade and Broward Counties, to be unenforceable. The basis for the decree was a holding that the agreement was a violation of Chapter 542, Fla. Stat., F.S.A.[1] This chapter is entitled: "Combinations Restricting Trade or Commerce" and prohibits, subject to named exceptions, any combination, "to prevent competition in manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or to prevent competition in aids to commerce."
The basic question is whether the chapter prohibits contracts made under the circumstances out of which this one grew. The appellant was plaintiff in the trial court and suffered an adverse decree dismissing its complaint. The decree was entered after trial. The chancellor has set down the factual background as follows:
"1. The litigants in the case at bar are two Florida regulated public utilities which voluntarily entered into a territorial service area agreement dividing the territory between them. It appears that upon application of the parties, the (Florida) Railroad and Public Utilities Commission gave its formal approval of the said agreement.
"A dispute later arose between the parties. Plaintiff claims the contract is valid and enforceable. Defendant claims the contract is void and unenforceable as contrary to the anti-trust laws of the state of Florida and the United States.
"Plaintiff admits that a territorial agreement as the one in question, without more, is indeed void. Plaintiff contends that the approval given by the utilities commission is the central fact that takes the agreement outside of the anti-trust laws and renders it valid and enforceable. Plaintiff also ascribes legal significance on the fact that these are `regulated' public utilities, and further that they are allegedly engaged in interstate commerce.
"Defendant contends that the Commission had no authority to approve such a contract, had no authority to supersede the courts and nullify the anti-trust laws, and that the said utilities are engaged in interstate commerce."
The suit was a complaint in equity brought by the appellant, Peoples Gas Company, seeking specific performance of the territorial service area agreement and an injunction against further violation of the agreement by construction undertaken by appellee. A pendente lite injunction was entered. At the conclusion of the plaintiff's *579 evidence, the chancellor dismissed the complaint and dissolved the temporary injunction. Upon the first appeal this court reversed and remanded the cause for trial. See Peoples Gas System, Inc. v. City Gas Company, Fla.App. 1962, 147 So.2d 334. The question that we found to be presented and our holding were as follows:
"* * * These findings were based on the chancellor's conclusion that the map attached to the agreement controlled over the detailed description contained on its reverse side and that the only service areas intended to be covered by the agreement were those shown on the map."
* * * * * *
"Applying these principles to the case at bar we conclude that the chancellor erred in placing a construction upon the agreement which treated as surplusage one of its substantial, integral parts which could have been given a reasonable meaning consistent with the other parts of the agreement."
* * * * * *
"Having considered the agreement, the map, and the description contained on the reverse side thereof, it is our conclusion that the parties intended the map to be demonstrative of the boundary line between their respective service areas, the areas themselves being delineated by the description contained on the reverse side of the map.
"Other contentions have been advanced by the appellant as further basis for the reversal of the decree appealed which we deem it unnecessary to discuss in view of the result reached herein."
This court's mandate was issued on January 3, 1963. Plaintiff moved the trial court on February 8, 1963, for an order citing defendant for contempt for having continued to construct gas facilities in plaintiff's service area, in violation of the circuit court's temporary injunction entered before the appeal. Plaintiff urged that the temporary injunction was re-instated as a result of this court's reversal of the final decree, wherein the temporary injunction had been dissolved. Plaintiff also moved for a new temporary injunction. Both aspects of plaintiff's motion were denied. The chancellor completed the trial of the cause and entered the final decree dismissing the complaint. This appeal followed.
Appellant's first point urges that it was error for the chancellor to dismiss the complaint after trial because this court's prior opinion established that the service area agreement was valid and enforceable. A reference to the portions of our judgment above quoted serves to show that this position is not correct. In the opinion we held that the factual matters found by the chancellor were not determinative and remanded the cause "for further proceedings not inconsistent herewith." The holding of this court left for determination by the trial court all issues not dealt with in the opinion. See Kelly v. Kaufman, Fla.App. 1958, 101 So.2d 909, 911 and authorities cited therein.
The second and third points presented urge that the chancellor erred in his holding that the service area agreement is in violation of the laws of the State of Florida and therefore, unenforceable. Under these points it is urged that the contract is not in violation of the laws of the State because (a) it is in keeping with the public policy of the State, and (b) the contract was specifically approved by the Florida Public Utilities Commission which had implied authority to approve such agreements. The decree of the chancellor was as follows:
"26. IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED as follows:
(1) That Chapter 542, including Section 542.10, is specifically applicable to the contract sought to be enforced herein
(2) That the claim by the plaintiff that Chapter 542 of the Florida Statutes *580 is or has been amended by implication by the provisions of any existing laws granting powers to the Florida Railroad & Public Utilities Commission, is hereby specifically denied.
(3) That the claim of the plaintiff that the effect of the Florida Statutes, Section 542, has been superseded by implication, or that its enforceability has been avoided or prevented by the acts of the Florida Railroad & Public Utilities Commission approving of the contract in question, is hereby denied.
(4) The counterclaim of the defendant or claims for affirmative relief and for damages, are hereby denied without prejudice to the defendant instituting such other suits at law or in equity in this or other forums or courts having proper jurisdiction, as it may be advised.
(5) The contract between Peoples Gas System, Inc., the plaintiff, and City Gas Company, dated the 9th day of September, 1960, being in violation of the laws of the State of Florida, as set forth above, is hereby declared to be void and unenforceable.
(6) Having adjudicated that the agreement of September 9, 1960, upon which the plaintiff predicates its claim for relief, is void and unenforceable, it is unnecessary for the Court to pass upon the other affirmative defenses, such as estoppel, urged by the defendant, and the Court does not pass upon these issues.
(7) The plaintiff's cause of action and all proceedings hereunder are hereby dismissed with prejudice."
The factual background, out of which this question arises, is not in controversy. The service area agreement defined the respective service areas of the parties in Dade and Broward Counties, Florida, and prohibited certain activities in the territory of the other.
Pursuant to, and as required by the terms of the agreement, plaintiff and defendant jointly filed a copy thereof with the Florida Public Utilities Commission which approved same by its Order No. 3051 entered in Docket No. 6231-GU on November 9, 1960.
In its order approving the agreement the Florida Public Utilities Commission stated by way of preamble:
"Peoples Gas System, Inc. and City Gas Company of Florida are gas public utilities operating under the jurisdiction of the Florida Railroad and Public Utilities Commission pursuant to Chapter 366, Florida Statutes. Said utilities have filed with this Commission a copy of a Territorial Agreement entered into between them on September 9, 1960. The territorial Agreement is an agreement between said companies as to the territorial service area boundary between said two companies in Dade and Broward Counties, Florida. Its approval is requested by the Commission.
"Chapter 366, Florida Statutes, does not authorize the Commission to grant franchises or certificates of public convenience and necessity to electric and gas public utilities. The Commission's jurisdiction under said chapter extends to the rates, service, and the issuance and sale of certain securities of public utilities as defined therein. In the exercise of this jurisdiction the Commission is specifically authorized to require repairs, improvements, additions and extensions to the plant and equipment of any public utility reasonably necessary to promote the convenience and welfare of the public and secure adequate service or facilities for those reasonably entitled thereto. Obviously, any agreement between two gas utilities which has for its purpose the establishing of service areas between the utilities will, in effect, limit to some extent the Commission's power to require additions and extensions to plant and equipment reasonably necessary to secure *581 adequate service to those reasonably entitled thereto. In our opinion, such a limitation can have no validity without the approval of this Commission.
"It is our opinion that territorial agreements which will minimize, and perhaps even eliminate, unnecessary and uneconomical duplication of plant and facilities which invariably accompany expansions into areas already served by a competing utility, are definitely in the public interest and should be encouraged and approved by an agency such as this, which is charged with the duty of regulating public utilities in the public interest. Duplication of public utility facilities is an economic waste and results in higher rates which the public must pay for essential services. Reasonable and realistic regulation, in such cases, is better than, and takes the place of competition. A public utility is entitled under the law to earn a reasonable return on its investment. If two similar utilities enter the same territory and compete for the limited business of the area, each will have fewer customers, but there inevitably will be excess facilities which must earn a reasonable return. The rates in such a situation will be higher than the service is worth, or customers in more remote areas will bear some of the unjustified expense necessary to support such economic waste. In the absence of a specific statute limiting the service areas of various public utilities, territorial agreements such as we are concerned with here, constitute no unreasonable restriction on the Commission's powers, but actually assist the Commission in the performance of its primary function of procuring for the public essential utility services at reasonable costs.
"Based upon our study of the Territorial Agreement under consideration and the circumstances surrounding the execution of said agreement, it is our opinion that said agreement is in the public interest and should be approved by this Commission."
Appellee in its approach to the question first urges as a ground for affirmance a position not adopted by the chancellor and one which must be held to have been rejected because if accepted by the court it would have precluded the question on which the case was decided. The suggested ground is that there were certain necessary parties, namely the City of Pompano, the City of Margate, and the Florida Public Utilities Commission, who should have been joined if appellant's prayer for enforcement of the service area agreement were to be considered. We do not find that this argument was advanced in the trial court and unless it is jurisdictional we ought not consider it here. Condrey v. Condrey, Fla. 1957, 92 So.2d 423. We think the objection advanced is not jurisdictional. The service area agreement, if valid, prohibited the defendant from entering appellant's service area. The contention that further action by other governmental entities might be required was a matter of defense to the specific performance prayed. The chancellor clearly had the right to determine the question that he did determine, that is: Was the service area agreement enforceable under the laws of this State?
As pointed out by the chancellor, the appellant does not contend that the agreement would have been valid if it (Peoples) and the appellee (City Gas) had merely executed the agreement and had never submitted it to the Florida Public Utilities Commission. The essence of appellant's position, as we understand it, is that the chancellor applied the wrong rule of law to the question of the enforceability of a service area agreement voluntarily made between two regulated public utilities and subsequently approved by the regulatory body. The rule that the chancellor applied has three steps: (1) The service area agreement would be invalid under the Florida Anti-Trust Statutes, Chapter 542, Fla. Stat., F.S.A., if *582 entered into by non-regulated businesses; (2) There is no express statutory authorization to the Florida Public Utilities Commission to approve service area agreements between regulated public utilities, and an authorization implied from the statute would not be sufficient; (3) The agreement being without authorization under the laws of Florida, is invalid as it would be for unregulated businesses.
The appellant, upon the other hand, contends for a different view of the law as to (2) and (3) above. It would say: (1) Admittedly the service area agreement would be invalid if entered into by non-regulated businesses; (2) The appellant and the appellee are regulated public utilities to whom the anti-trust legislation found in Chapter 542, Fla. Stat., F.S.A., does not apply, because an over-all and comprehensive statutory system of regulation is found in Chapters 350, 364, and 366, Fla. Stat.; (3) Because the agreement was within the legislature's contemplated statutory framework for the regulation of public utilities, the approval by the regulatory body was within its implied powers and effective to make the agreement enforceable.
Since appellant and appellee are in agreement that the service area agreement would be unenforceable between non-regulated businesses and that the Florida Public Utilities Commission has no express statutory authority in the matter, we pass on to the question of whether the statutes of this State may be reasonably said to support a different rule for regulated public utilities than that expressed in Chapter 542, Fla. Stat., F.S.A., for non-regulated businesses.
Chapter 542, Fla. Stat., F.S.A., is Florida's Anti-Trust Law. Its purpose is to protect the public against trusts or monopolies and the evils flowing therefrom in relation to business affecting the public in general. It is concerned with economic policy. Its principal purpose, like all such laws, is to protect the public against any scheme, control or combination which creates a monopoly whereby the supply and price of commodities may be controlled, to the injury of the public. It acts by fostering and securing free enterprise or free competition, precluding combinations which tend to defeat free enterprise or free competition. Its philosophy may be said to be that by free enterprise or free competition the price the public will have to pay will be kept reasonable and the product the best. This Law, like all anti-trust laws, is an exercise by the state of its police power for the public welfare. See cases cited at 58 C.J.S. Monopolies §§ 27, 28 b.
Chapter 366, Fla. Stat., F.S.A., pertains to the control and regulation of private businesses furnishing gas or electricity to the public. These businesses are placed under the control and regulation of the Florida Public Utilities Commission. This Statute again is designed to protect the public against monopolies and the evils flowing therefrom, but not in relation to all businesses affecting the public, but only in relation to those selected by this Law, namely, privately-owned public utilities furnishing gas and electricity to the public. This Law is also concerned with economic policy. Its principal purpose is to protect the public against injury by an entirely different means other than through free competition. It acts through control and regulation by a state agency to insure to the public, at fair and reasonable rates and charges, gas and electricity through reasonably sufficient, adequate and efficient service, by and through the plant and facilities needed. This law is again an exercise by the state of its police power for the public welfare. § 366.01 Fla. Stat., F.S.A.
Thus, Chapters 542 and 366 are basically designed, through the exercise of the police power, to protect the public, but each in a different manner. Chapter 542 acts upon business in general by fostering free competition, and chapter 366 acts upon certain specific selected businesses, namely, public utilities furnishing gas and electricity, not through free competition but through control and regulation.
*583 The Supreme Court of Florida has recognized that the State has chosen to protect the public from monopolies and trusts in the public utility field by creating the Florida Public Utilities Commission and by vesting it with the powers necessary to regulate public utilities in the public interest. In City of St. Petersburg v. Carter, Fla. 1949, 39 So.2d 804, the Supreme Court stated:
"The Florida Railroad and Public Utilities Commission was created for the purpose of protecting the general public from unreasonable and arbitrary charges that might be made by railroads and other transportation companies which may be classified as monopolies. The authority to regulate monopolies springs from the police power of the sovereign state and should be exercised only when necessary for the general welfare and to the end that all types of unjust, arbitrary and unreasonable discrimination against the interest of the public may be eliminated. * * *" 39 So.2d p. 806.
Having determined that there is a basis in the legislative policy of this State for a different rule for regulated public utilities, if such rule exists, we turn to the question of whether the Florida Public Utilities Commission may be said to have the implied power to regulate, and therefore approve or disapprove, service area agreements between public utilities.
The chancellor in his scholarly and thorough opinion stated the problem as follows:
"3. The plaintiff has been unable to cite an express authorization by a Florida statute giving the utilities commission power and authority to approve such voluntarily entered contracts, and the further power to supersede the courts and nullify the anti-trust statutes of the state and the nation, declaratory of the public policy of the state and nation.
"In order to prevail, plaintiff must show that Florida law permits the utilities commission to amend or change the law, here the anti-trust law, by implication inherent or read into the statute creating the Commission and giving it its powers and authority.
"It is not enough to show what another jurisdiction may have said or done under similar circumstances. Florida is a sovereign state, other decisions or dicta may be persuasive but are not controlling, and Florida must decide for itself which rule to follow consistent with other relevant and material Florida principles and rules of law in related matters heretofore adhered to."
After discussing precedents in other states, the chancellor reached his decision:
"18. The Railroad and Public Utilities Commission has only such powers as are expressly or impliedly conferred on them by statute. 27 Fla.Jur. 180, Railroad and Public Utilities Commission, Sec. 42, Powers, no. 5, citing Fogarty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883 (Fla. 1959)
"19. Again, at 27 Fla.Jur. 181, notes 9 to 13:
"The powers of the commissioners, wide though they are, are nevertheless special and limited (n. 9, citing Atlantic Coast Line R. Co. v. State, [73 Fla. 609], 74 So. 595 (Fla. 1917), for the commission enjoys only such powers as have in fact been granted to it by the legislature (n. 10, citing Florida Tel. Corp. v. Carter, 70 So.2d 508 (Fla. 1954). It is beyond the power of the Commission to amend (n. 11, citing Atlantic Coast Line R. Co. v. Mack, 57 So.2d 447 (Fla. 1952), and Diamond Cab Owners Asso. v. Florida R. & Public Util. Comm., 66 So.2d 593 (Fla. 1953) or change (N. 12, citing the Atlantic Coast Line R. Co. v. Mack, supra, the Diamond Cab Owners, supra, and Tel. Corp. v. Carter, supra) the law; its powers are restricted to those *584 conferred by the express terms of the statute or which may be reasonably implied from them (n. 13, citing numerous cases)."
* * * * * *
"21. Free enterprise is a basic public policy of the state and nation. This is universally accepted and no citations are necessary, and free competition is a basic postulate of our free enterprise system. People v. Federal Power Commission [111 U.S.App.D.C. 226], 296 F.2d 348, 353 (C.A., D.C., 1961), reversed by U.S. Supreme Court on other grounds."
* * * * * *
"It necessarily follows that if there is a whole, or partial, change in an established policy, particularly when a statute is enacted declaratory of it, it takes another statute by express authority to effectuate such a basic change in policy.
"It necessarily follows that an administrative agency, without express authority, cannot by mere implication extend its powers and nullify the anti-trust laws."
Thus, we reach what we think is the crucial question: Can the Public Utilities Commission exercise any power not expressly granted? We begin with the realization that all powers exercised by the Commission must come from the statute. The problem is may a power come to the Commission by its general grant of authority, (1) to regulate and supervise each utility with respect to its rates and service as well as to the issuance and sale of its securities. § 366.04, Fla. Stat., F.S.A.; (2) to require repairs, improvements, additions and extensions to plants and equipment in order to promote convenience and welfare of the public and secure adequate service. § 366.05, Fla. Stat., F.S.A.; (3) to promulgate rules and regulations affecting equipment, facilities and service to be installed. § 366.06(3), Fla. Stat., F.S.A.
The Legislature has expressed its purpose as to the regulation of public utilities as follows:
"The regulation of public utilities as defined herein is declared to be in the public interest and this Chapter shall be deemed to be in exercise of the police power of the state for the protection of the public welfare and all the provisions hereof shall be liberally construed for the accomplishment of that purpose." § 366.01, Fla. Stat., F.S.A. [Emphasis supplied].
A regulatory commission may have implied powers. The Borden Company v. Odham, Fla. 1960, 121 So.2d 625. The Odham case involved the implied power of the Milk Commission to force milk distributors to accept at a fixed price all milk tendered by producers. The Supreme Court upheld the exercise of the implied power and said:
"It is, therefore, our opinion that on account of the liberal powers vested in the Commission by Chapter 501, Florida Statutes, F.S.A., the finding that it was a proper exercise of the police power and the manifest purpose of the act, the conclusion of the Chancellor that the Commission had authority to require distributors and producer-distributors to accept all milk from their producers and pay minimum prices therefor, provided it acts reasonably under the circumstances before it is amply supported and should be affirmed."
121 So.2d p. 632.
See also Fogarty Bros. Transfer, Inc. v. Boyd, Fla. 1959, 109 So.2d 883; Cf., In Re Warner's Estate, 1948, 160 Fla. 460, 35 So.2d 296.
Having reached the conclusion that the Public Utilities Commission may exercise an implied power if such exists, we are impelled to the decision that such power exists in the commission to approve and make binding service area agreements between regulated public utilities. This decision *585 is reached because of (1) the jurisdictional power, control and authority given the Commission by Chapter 366, Fla. Stat.,F.S.A., (2) the public interest in effective and adequate regulation and control in order to prevent duplication of service and consequent higher rates; (3) the express directions of the legislature that the powers granted by Chapter 366, Fla. Stat., F.S.A., be liberally construed.
Appellant's fourth point concerns the pendente lite injunction entered by the chancellor and dissolved in the first final decree, which was entered at the close of plaintiff's evidence. The remedy sought by the plaintiff in this action was specific performance of the service area agreement by way of injunction, both temporary and permanent. Pursuant to motion of the plaintiff, the chancellor on May 9, 1962, entered an order temporarily restraining the defendant from further construction in the service area claimed by the plaintiff. This temporary injunction was specifically dissolved by a paragraph of the final decree of May 23, 1962, which was entered at the close of plaintiff's case. Reference has already been made to the appeal from that final decree which followed.
During the pendency of the first appeal, the defendant again began construction in the service area claimed by plaintiff. This court reversed the final decree of dismissal and remanded the cause for a trial of the issues. Upon the remand, the plaintiff moved for an order citing the defendant for contempt by the violation of the temporary restraining order. The basis for the motion was plaintiff's contention that upon the reversal of the final decree, the pendente lite injunction was revived as though it had never been dissolved. Plaintiff's motion asked that in event the trial court held the temporary injunction was not reinstated, that a new injunction be entered. The chancellor denied the motion. Appellant's fourth point urges that the chancellor erred in denying the citation for contempt and in denying the new injunction.
As has already been pointed out, this Court's opinion on the first appeal, Peoples Gas System, Inc. v. City Gas Company, Fla.App. 1962, 147 So.2d 334, held only that the factual matters found by the chancellor were not determinative. This holding left for determination by the trial court all issues not dealt with in the opinion. The right to pendente lite injunctive relief was not dealt with in the opinion; therefore, by the express words of the opinion this Court left that matter for the trial court's consideration. Therefore, no error has been demonstrated upon the refusal to hold defendant in contempt.
A consideration of this record, which presents substantial legal problems, does not convince us that plaintiff's case for pendente lite relief was so ample and that of the defendant so insufficient as to constitute the denial of the temporary injunction an abuse of the broad discretion of the chancellor. Albury v. Plumbers Local Union No. 519, A.F. of L.-C.I.O., Fla.App. 1958, 100 So.2d 647.
The appellee attempts to present an additional point based upon a cross assignment of error. The substance of this cross assignment is that the court erred in not giving as additional ground for its decree dismissing the cause. The additional ground urged by appellee is the contention that the service area agreement is unenforceable because it is in violation of the Anti-Trust Monopoly Statutes of the United States.
Appellee's point is improperly presented because the cross assignment of error does not lie. Rule 3.5 Florida Appellate Rules, 31 F.S.A., is the basis for cross assignments of error. It provides that: "c. Essentials. The assignments or cross assignments shall designate identified judicial acts which should be stated as they occurred; grounds for error need not be stated in the assignment." Therefore assignments and cross assignments lie to judicial acts and not to the grounds given by the Court for its *586 judicial acts. We can not consider the point raised by appellee.
Having considered the points presented and having reached the conclusion that the chancellor erroneously held that the service area agreement was unenforceable as a violation of Chapter 542, Fla. Stat., F.S.A., the decree appealed is reversed with directions to proceed with the cause.
Reversed.
NOTES
[1] Section 542.10 provides: "Any contract or agreement in violation of the provisions of this chapter shall be void and not enforceable either in law or equity."