QUESTIONS: 1. Which provisions of the Florida election laws have been affected by the United States Supreme Court decision in Buckley v. Valeo, 96 S.Ct. 612 (1976)? 2. Does the Department of State have the authority to require, by the adoption of administrative rules, disclosure of campaign spending activities by third-party independent spenders?
SUMMARY: The United States Supreme Court decision in Buckley v. Valeo, 96 S.Ct. 612 (1976), has the effect of invalidating, on constitutional grounds, state campaign financing statutes which have the same purpose and effect as the federal statutes invalidated in Buckley. The Department of State has the authority to require, by the adoption of administrative rules, disclosure of campaign spending activities by third-party independent spenders. AS TO QUESTION 1: In the case of Buckley v. Valeo, 96 S.Ct. 612
(1976), the United States Supreme Court ruled on constitutional challenges to numerous provisions of the federal campaign financing laws. The essence of the decision is perhaps best summarized in the court's own words: In summary, we sustain the individual contribution limits, the disclosure and reporting provisions, and the public financing scheme. We conclude, however, that the limitations on campaign expenditures by individuals and groups, and on expenditures by a candidate from his personal funds are constitutionally infirm. Finally, we hold that most of the powers conferred by the Act upon the Federal Election Commission can be exercised only by "Officers of the United States," appointed in conformity with Art. II, s. 2, cl. 2 of the Constitution, and therefore cannot be exercised by the Commission as presently constituted. (Emphasis supplied.) As discussed in further detail below, a number of the provisions of the Florida Statutes regulating campaign financing (many of which were modeled on the federal regulatory scheme) have the same effect as, and prohibit the same activities as, the federal statutes invalidated in the Buckley case, supra. It cannot be gainsaid that the interest of the state in regulating such matters with respect to candidates for state and local offices is indistinguishable in nature or degree from the interest of the federal government in the regulation of the campaign financing activities of candidates for federal office. Similarly, those who would participate in state or local political activity are no less entitled to the exercise of their First Amendment freedoms than are those who choose to become active in federal political campaigns. Such being the case, I am of the view that the Buckley decision must be regarded as having the effect of invalidating all state statutory provisions which have the same purpose and effect as the federal statutes invalidated in Buckley. To adopt any other construction of the Buckley decision would be to disregard, with no substantial foundation for so doing, the First Amendment rights of those who participate in state and local political campaigns. In the following paragraphs, I have listed the provisions of our state campaign financing laws which are clearly affected by the Buckley decision. It should be noted that it is also possible the Buckley decision may in the future be found to affect other statutory provisions within the context of a particular factual situation. The provisions of s. 106.10, F. S., would appear to be invalidated in toto by the Buckley decision. Section 106.10 has the effect of prohibiting all candidates for state and local office from expending funds on behalf of their nomination or election in excess of the dollar-amount limits specified in the statute. With respect to such prohibitions in the federal legislation, the court in Buckley said: The Act's expenditure ceilings impose direct and substantial restraints on the quantity of political speech. * * * It is clear that a primary effect of these expenditure limitations is to restrict the quantity of campaign speech by individuals, groups, and candidates. We find that the governmental interest in preventing corruption and the appearance of corruption is inadequate to justify . . . [the] ceiling on independent expenditures. The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates. Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing them on election day. No governmental interest that has been suggested is sufficient to justify the restriction on the quantity of political expression imposed by . . . [the] campaign expenditure limitations. For the same reasons, the provisions of s. 106.19(1)(d), F. S., are invalidated to the extent that they impose a penalty for making expenditures in excess of the amounts provided in s. 106.10, F. S. The provisions of s. 106.021(3) and (4), F. S., would appear to be invalidated by the Buckley decision to the extent that they operate to prohibit expenditures by a group or individual which are not coordinated with a candidate. Buckley invalidated, on First Amendment grounds, a federal statute which had the effect of limiting the amount a group or individual could spend advocating the election or defeat of a candidate. In so doing, the court stated: We find that the governmental interest in preventing corruption and the appearance of corruption is inadequate to justify . . . [the statute's] ceiling on independent expenditures. While the independent expenditure ceiling thus fails to serve any substantial governmental interest in stemming the reality or appearance of corruption in the electoral process, it heavily burdens core First Amendment expression. For the reasons stated, we conclude that . . . [the statute's] independent expenditure limitation is unconstitutional under the First Amendment.
It cannot be doubted that if a limitation on such spending offends the First Amendment guarantees, no less violence is done to the Constitution by a statute which prohibits such spending. It should also be noted that to the extent that s. 106.14, F. S., might appear to prohibit uncoordinated expenditures by a group or individual, it should be regarded as invalidated for the reasons discussed immediately above. The question of whether s. 106.15, F. S., is also rendered invalid by Buckley is presently pending in a case before the Florida courts. I am of the opinion that there are distinguishing features between the statutes ruled on in the Buckley case and the provisions of s. 106.15 and have taken the position in the pending litigation that s. 106.15 is unaffected by the Buckley case. Until the litigation regarding s. 106.15 is resolved, I am of the view that it should be regarded as unaffected by Buckley. AS TO QUESTION 2: Being an "agency" within the definition of that term found at s. 120.52(1), F. S., the Department of State is subject to the Administrative Procedure Act. Cf. AGO's 075-6, 076-50, 076-116, and 076-126. In addition, the Division of Elections of the Department of State is expressly made subject to the Administrative Procedure Act by s. 106.22(16), F. S., which involves the adoption of rules by the division regarding campaign financing. As such, the department is prohibited from the exercise of "inherent" rulemaking authority by s. 120.54(13), F. S. Nevertheless, there is a clear distinction between the exercise of "inherent" rulemaking authority, prohibited by the Administrative Procedure Act, and the exercise of "implied" authority which (it is well settled by judicial decision) does exist. "Inherent power" of an agency is that authority alleged to exist without its being derived from any source; a right or ability to do things without having received that right or ability from another source. Black's Law Dictionary 921 (Rev. 4th Ed.). "Implied powers" of an agency are those which are necessary to effectuate powers expressly granted or conferred and which must therefore be presumed to have been within the intention of the legislative grant of authority to the agency. Black's Law Dictionary, supra, at p. 1334. This distinction has been recognized in St. Regis Paper Co. v. State, 237 So.2d 797 (1 D.C.A. Fla., 1970), affirmed in part, expunged in part,257 So.2d 253 (Fla. 1971), wherein the court held that while statutory agencies do not possess any "inherent" powers, they do have, and are limited to, powers granted either expressly or impliedly in the agency's enabling legislation. The court stated at 799:[2] The [Florida Air and Water Pollution Control] Commission strenuously argues that its grant of powers is derived from Chapter 403 and it further has the inherent powers of both the State Board of Health, under Chapter 381, Florida Statutes, F.S.A. and that of the former Air Pollution Control Commission, under Chapter 403, Florida Statutes, F.S.A. It is well settled that a statutory agency does not possess any inherent powers; such agency is limited to the powers granted, either expressly or by necessary implication, by the statutes creating them. Florida Industrial Commission ex rel. Special Disability Fund v. National Trucking Company, 107 So.2d 397 (Fla.App.1st, 1958). (Emphasis supplied.) It is therefore evident that while the Administrative Procedure Act codified the prohibition against an agency's exercise of inherent powers (s. 120.54[13], F. S.), it has not affected the existence or exercise of implied authority by agencies which the courts have traditionally recognized to exist. Peoples Gas System, Inc. v. City Gas Co., 167 So.2d 577 (3 D.C.A. Fla., 1964), aff'd,182 So.2d 429 (Fla. 1965). The implied authority of an agency is that power which exists by fair implication and intendment incident to, and included in, authority expressly conferred on the agency, the exercise of which is consistent with, and necessary for, the effectuation of the agency's statutory duties and responsibilities. State v. Atlantic Coast Line R. Co., 47 So. 969
(Fla. 1908). As stated in Williams v. Florida Real Estate Commission, 232 So.2d 239 (4 D.C.A. Fla., 1970) at 240:[1] Administrative agencies are creatures of statutes. Their powers are special and limited, being only those which are legally conferred upon them by the statutes of the state, expressly or impliedly for the purpose of carrying out the aims for which they were established. State ex rel. Burr v. Jacksonville Terminal Co., 1916, 71 Fla. 295, 71 So. 474. The statute which creates the administrative agency and invests it with its powers restricts it to the powers granted. The agency has no powers except those mentioned in the statute or reasonably implied. It is the statute, not the agency, which directs what shall be done. The statute is not a mere outline of policy, which the agency is at liberty to disregard or put into effect according to the agency's ideas of what is best for the public welfare. (Emphasis supplied.) Implied powers must, of course, be reasonably implied from the express terms of the statute and must, by fair implication, be incident to, and included in, the authority expressly conferred. Keating v. State, 167 So.2d 46 (1 D.C.A. Fla., 1964), quashed on other grounds, 173 So.2d 673 (Fla. 1965). Beyond the mere existence of implied powers, the courts have also ruled that such implied powers are equal in legal force and effect to an agency's express powers. In City Gas Co. v. Peoples Gas System, Inc., 182 So.2d 429
(Fla. 1965), the Florida Supreme Court indicated at 436 and 437: . . . we reject the notion of any such distinction between express and implied statutory authority as posited by the chancellor. The powers of this and similar agencies include both those expressly given and those given by clear and necessary implication from the provisions of the statute. State ex rel. Wells v. Western Union Tel. Co., 1928, 96 Fla. 392, 118 So. 478. Neither category is possessed of greater dignity or effect. (Emphasis supplied.) It therefore appears that the Department of State may exercise that implied rulemaking authority which is, by fair implication, incident and necessary to the effectuation of its express statutory authority and responsibilities regarding campaign financing found in Ch. 106, F. S. Turning now to the express statutory powers and duties of the Department of State regarding campaign financing, attention is first directed to s. 15.13, F. S., which provides, inter alia: "The Department of State shall have general supervision and administration of the election laws." The Secretary of State has also been statutorily designated the chief election officer of the state and has been granted broad authority to maintain uniformity in the election process by s.97.012, F. S.: The Secretary of State is the chief election officer of the state, and it is his responsibility to:
(1) Obtain and maintain uniformity in the application, operation, and interpretation of the election laws. To implement this broad statutory charge, the Legislature has empowered the Secretary of State, through the Division of Elections, to promulgate rules to implement the Florida Campaign Financing Act: It shall be the duty of the Division of Elections to: * * * * * (16) Prescribe suitable rules and regulations to carry out the provisions of this chapter. Such rules shall be prescribed pursuant to chapter 120. [Section106.22, F. S.; emphasis supplied.] I am of the view that the statutory responsibility of the Secretary of State to insure "uniformity in the application, operation, and interpretation of the election laws," coupled with the duty to "[p]rescribe suitable rules and regulations to carry out the provisions" of the campaign financing laws, provides ample authority under the legal principles discussed above for the Department of State to adopt rules and regulations to require uniform disclosure of all campaign spending activities. Specifically, such rules and regulations could include the imposition of disclosure requirements on groups or individuals who make independent expenditures which are not coordinated with any candidate. Unquestionably, it would be desirable for the Legislature to enact modernizing legislation to conform the letter of the campaign financing laws to the guidelines of the Buckley case. However, their failure to do so has not left us with an unworkable system. As noted in answering your first question, very few of our campaign financing statutes have been affected by Buckley. And, as concluded above, the Department of State has at least implied authority to enact rules and regulations to establish uniform disclosure of all campaign spending. Your second question is answered in the affirmative.