109 So.2d 883 (1959)
FOGARTY BROS. TRANSFER, INC., et al., Petitioners,
v.
Alan S. BOYD et al., Respondents.
Supreme Court of Florida.
February 25, 1959.
Rehearing Denied April 9, 1959.
*885 Wayn K. Ramsay, Dan R. Schwartz, Norman J. Bolinger, Jacksonville, John M. Allison, Tampa, and George E. Turner, Jacksonville, for petitioners.
Lewis W. Petteway, Tallahassee, for Florida Railroad and Public Utilities Commission, respondents.
O.C. Beakes, Jacksonville, for intervenor.
HOBSON, Justice.
This is a proceeding by six motor freight common carriers holding Florida certificates of authority, seeking a writ of certiorari to review Order 4241 of the Florida Railroad and Public Utilities Commission prescribing rules and regulations governing household goods carriers in leasing motor vehicles from others, in the domiciling of their motor vehicle equipment and in using agents.
The historic development of Order 4241 is as follows: After extensive hearings into certain abusive practices by household goods carriers, the Commission, on December 30, 1952, issued Order 2791. Said order revoked all "For Hire" permits and all certificates of public convenience and necessity issued by the Commission, "except such certificates which conform" to the Commission's findings in said order. The order also provided, in lieu of the revoked certificates and permits, for the issuance of certificates of public convenience and necessity for limited common carriage of household goods non-radially over irregular routes to, from, and between all points and places in Florida. Each household goods carrier operating under the jurisdiction of the Commission was granted operating authority with reference to one specific domiciling city. A certificate authorizing operation "to, from, and between all points and places" within the State was defined as to merely authorize non-radial operation and not to include multiple domiciles.
Order 2791 further prescribed rules controlling the leasing of motor vehicle equipment and domiciling the same.[1] Two of the petitioners herein, Fogarty Brothers and Delcher Brothers, attempted to enjoin the enforcement of the leasing and domicile rules adopted by Order 2791. The Circuit Court of the 2nd Judicial Circuit, on March 9, 1956, dissolved its temporary injunction and dismissed both suits on the ground that Order 2791 was valid. Only Delcher Brothers appealed to the Supreme Court, said appeal being voluntarily dismissed by it on July 3, 1956. On April 4, 1958, after a series of hearings, the Commission revised the rules and regulations governing the practices of household goods carriers, and issued Order 4241, which is herein challenged.
The petitioners' principal contention is that the Commission exceeded its power when it adopted Order 4241. That is to say, that the Commission has, in this order, created classifications of certificates for auto transportation companies not recognized by statute and impaired the validity of existing *886 certificates in a manner other than expressly provided for by the Legislature.
It is clear that the Railroad and Public Utilities Commission has only such powers as are expressly or impliedly conferred upon them by statute. Florida Motor Lines v. State Railroad Commission, 1931, 101 Fla. 1018, 132 So. 851, 860.
However, by the very nature of the problem it is manifestly evident that the difficulty of making a specific enumeration of all such powers as the Legislature may intend to confer upon Railroad Commissions for the regulation of common carriers in the interest of the public welfare renders it necessary to confer some power in general terms; and general powers given are intended to confer other powers than those specifically enumerated. State ex rel. Railroad Com'rs v. Atlantic Coast Line R. Co., 1911, 61 Fla. 799, 54 So. 900.
It is here appropriate to quote and adopt as our own the following significant excerpt from the case of American Trucking Ass'n v. United States, 1952, 344 U.S. 298, 73 S.Ct. 307, 314, 97 L.Ed. 337, 355, wherein the Supreme Court of the United States, in determining whether the Interstate Commerce Commission has the power to control and regulate the leasing practices of interstate carriers, said:
"Our function, however, does not stop with a section-by-section search for the phrase `regulation of leasing practices' among the literal words of the statutory provisions. As a matter of principle, we might agree with appellants' contentions if we thought it a reasonable canon of interpretation that the draftsmen of acts delegating agency powers, as a practical and realistic matter, can or do include specific consideration of every evil sought to be corrected. But no great acquaintance with practical affairs is required to know that such prescience, either in fact or in the minds of Congress, does not exist. National Broadcasting Co. v. United States, 319 U.S. 190, 219, 220, 63 S.Ct. 997, 1010, 1011, 87 L.Ed. 1344 [1364, 1365]; Phelps Dodge Corp. v. National Labor Relations Bd., 313 U.S. 177, 193, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 [1282, 1283], 133 A.L.R. 1217. Its very absence, moreover, is precisely one of the reasons why regulatory agencies such as the Commission are created, for it is the fond hope of their authors that they bring to their work the expert's familiarity with industry conditions which members of the delegating legislatures cannot be expected to possess. United States v. Pennsylvania R. Co., 323 U.S. 612, 65 S.Ct. 471, 89 L.Ed. 499."
In the exercise of the authority conferred upon it by statute, the Commission may, within the limitations expressly or impliedly defined by organic or statutory law, exercise reasonable administrative discretion and judgment to effectuate the intent of the law as it may legally be applied to varying conditions.
It is here desirable to consider the legislative intent in placing the auto transportation industry under the control of the Railroad and Public Utilities Commission.
In the significant case of Riley v. Lawson, 1932, 106 Fla. 521, 143 So. 619, 623, this court found the Legislature had five main purposes when it adopted the Auto Transportation Act. Most pertinent to our inquiry are the following:
"(1) To furnish the traveling and shipping public a well defined method of securing motor highway transportation, both passenger and freight, in keeping with modern developments, and when such facilities are authorized to reasonably regulate and supervise the industry in the interest of the traveling and shipping public.
* * * * * *
"(3) To protect and conserve existing transportation facilities against ruthless, unbridled and destructive *887 competition, which if unregulated might seriously impair and ultimately destroy not only itself but other transportation facilities to the public's damage."
Order 4241 was adopted after extensive hearings and its purpose was primarily to curb certain abusive practices, to-wit: (a) the expansion of the larger carriers into new domicile points unless they could show public convenience and necessity required it; and (b) the passing on of certificate privileges to noncertificate holders under the guise of "spot" leasing, intermittent leases and similar evasive devices. These practices are clearly within the abuses which the Legislature intended to correct in its enactment of Chapter 323, Florida Statutes, F.S.A. Order 4241 attempts to accomplish these purposes by limiting the places a carrier may domicile his equipment, controlling the appointment and conduct of the carriers' agents, and limiting the manner in which a carrier may lease equipment.
With reference to the leasing practices of the household goods carriers, Rule 2 of Order 4241 provides that a household goods carrier can only lease vehicles to replace a disabled vehicle or to augment its motor vehicle equipment.[2] A lease for the purpose of augmenting the carrier's equipment must be in writing and must be for a period of not less than 90 days. The power of the Commission to issue such a leasing rule is herein challenged.
Section 323.07, Florida Statutes, F.S.A., provides in part:
"The commission may supervise and regulate every auto transportation company in the state operating under the authority of this chapter, fix or approve the rates, fares, charges, classifications, rules and regulations for such auto transportation companies, regulate the service and safety of operations, of each such auto transportation company, * * * and supervise and regulate auto transportation companies in all other matters affecting the relationship between such companies and the traveling and shipping public." (Emphasis supplied.)
From the above quoted statute it is evident that the Commission's power extends to the service and safety of the auto transportation industry and to all matters affecting the relationship between such companies and the shipping public. Although the statutes do not specifically mention the right of the Commission to regulate *888 the leasing of motor equipment, this right is implied within its duties to regulate those practices of the carriers which affect the service and safety of the auto transportation industry.
As a practical matter short term or intermittent leases are often a means by which household goods carriers holding state-wide certificates pass a portion of these certificated rights on to owners of motor vehicle equipment who have no such rights. Rule 2 provides a measure of protection to the shipping and motoring public by forcing the lessee-carrier to assume full responsibility and liability for the operation of the leased vehicle and for all cargo transported during the term of the lease. The Commission's power to control these leasing practices is clearly within the scope of its implied powers and in keeping with the spirit of its statutory authority.
The principal contention of the petitioners is that the Commission has no power to regulate the domiciling of household goods carriers' equipment.[3] It is contended that the domicile rule has the practical effect of impairing or amending the petitioners' existing certificates and creating a classification of certificates not required or authorized by statute. Petitioners assert that their certificates as issued authorize them to transport household goods "to, from, and between all points and places in Florida". Petitioners although recognizing that the granting of a certificate is a privilege and not a right, maintain that once a certificate is granted it may only be modified, changed or amended under specific provisions of the statute. They contend the statutes provide for such changes only in the cases of transfer or assignment (§ 323.041, F.S.A.), abandonment (§ 323.10, F.S.A.) and revocation (§ 323.09, F.S.A.). Since their certificates were not limited at the time of issue (an assertion unsupported by any evidence before this court), they cannot be limited retrospectively under the guise of rule-making. Even if we accept the petitioners' contentions as correct, for the sake of argument, we are not convinced the disputed rules restrict their certificates.
As often pointed out, rules of the Commission are cloaked in a presumption of statutory validity which places upon the petitioners the burden of proving their invalidity (§ 350.12, F.S.A.). The petitioners herein have considered it sufficient to make a bare assertion that their certificates as issued gave them the right to domicile their equipment anywhere in the State of Florida. We cannot agree. The right to transport household goods "to, from, and between all points and places in Florida", without more, cannot be said to carry with it the power to domicile equipment at "all points and places in Florida". In addition to this lack of affirmative evidence of the invalidity of Order 4241, the petitioners' position flies directly in the face of the Commission's Order 2791. Under said order the Railroad and Public Utilities Commission revoked all household goods carriers' certificates and permits and issued in lieu thereof certificates of public convenience and necessity for limited common carriage of household goods. This took place after comprehensive public hearings, pursuant to notice. This action of the Commission was inferentially supported as to "For Hire" permits *889 in the case of Teague v. King, Fla. 1957, 96 So.2d 796.
In its Order 2791, the Commission said in part:
"Each household goods carrier operating under the jurisdiction of this Commission has been granted operating authority with reference to one specific domiciliary city. A certificate authorizing operation to, from and between all points and places within the State of Florida merely authorizes non-radial operation. No household goods carrier has authority to domicile motor vehicle equipment, even if exclusively owned, used and controlled by the carrier, in additional cities. To hold otherwise would allow a carrier to move in upon and to compete directly with the certificated household goods carriers legitimately domiciled in each of the invaded cities without regard to the requirement of public convenience and necessity and in direct contravention of the statutory duty of this Commission to protect the public transportation system against destructive competition." (Emphasis supplied.)
It is our certain belief that the petitioners never had the right to domicile their equipment where they please, but were and still are limited to their original domicile or those granted subsequently by the Commission. The Commission has not taken any rights from the petitioners, for they have failed to show us that they ever were possessed of such rights. It seems equally clear that if they ever possessed such rights they were superseded and modified by Commission Order 2791. Such reclassification is within the power granted the Commission under the specific or implied provisions of Chapter 323, F.S.A.
It is further urged by the petitioners that the Commission has created a unique classification of carrier certificates not authorized by statute. The petitioners maintain that the statutes contemplate only three classifications of certificates: "forhire, private contract and common carrier".
Section 323.07 empowers the Commission to "fix or approve the rates, fares, charges, classification, * * *". In view of the complex and intricate problems essentially implicit in regulating the auto transportation industry, it is a convenient as well as necessary implication of the statutes that the various problems of segments of the industry may each be met with individually tailored rules and regulations.
It is our belief that the petitioners misunderstood the plain language of the Commission's Order 4241. This order does not take any certificated rights from the petitioners. The petitioners' certificates are not impaired, revoked, restricted or otherwise altered. They can still transport household goods "to, from, and between all points and places in the State of Florida". Said regulation merely forces upon the household goods carriers the duty to show public convenience and necessity when it desires to domicile its equipment at a new location. It is impossible to understand how this impairs their existing rights.
Nor is this a classification unauthorized by statute. As a practical matter it would be impossible for all of an administrative agency's orders to be applicable to the entire industry. Respondent in its brief, has cited as an example of the results of having all Commission orders applicable to the entire industry, the absurdity of having a regulation control lectures given on a sightseeing bus applied to common carriage of passengers. While confessing amusement at its example, we do agree that it would defeat the basic usefulness of the Commission if it were limited to prescribing only regulations of general applicability.
This discussion of the problems surrounding domiciling of household goods carriers' equipment would be incomplete if we failed to point out that the Commission *890 bears upon its shoulders the duty to expeditiously hear and pass upon all applications for additional domicile points presented to them by household goods carriers. It is anticipated that the degree of proof necessary to establish the requisite public convenience and necessity for a new domicile point will be less exacting than that required of a carrier upon application for an original certificate or an extension of existing service.
In view of the fact that the petitioners attack the Commission's power to promulgate all of the rules appended to Order 4241, we make but slight reference to their sally upon that portion of said rules which applies to the carriers' agents.[4] Rule 4 requires the registration with the Commission of each household goods carrier's agent, limits each carrier to one agent per community and prohibits the agent from representing more than one carrier. Said rule further provides that the Commission may inquire into the fitness of an agent and may disapprove those found unfit. Further, the carriers may not transport a shipment solicited by any but their own registered agents or full time employees.
The powers granted the Commission under Chapter 323, and more specifically § 323.07, are sufficiently broad to include the power to regulate the activities and conduct of the carriers' agents, as well as its employees. Any other interpretation of the statutes would defeat the obvious intent of the Legislature and render the Commission powerless to carry out its statutory duties.
For the reasons above stated, we believe the prescribing of regulations controlling household goods carriers' activities in the field of agents, leasing and domiciling of motor vehicle equipment is within the specific or implied statutory powers of the Railroad and Public Utilities Commission.
As the second prong of the petitioners' attack on the Commission's order, they contend that the Commission's Order 4241 and its appended rules are unreasonable, arbitrary and discriminate against household goods carriers, as a class and between household goods carriers holding inter and intrastate authority.
This case is here on certiorari. The objective of review on certiorari from a Railroad Commission's order is limited to a determination whether the order is illegal as a matter of law, or was made without observing statutory provisions governing procedure, or whether in its operation the order will violate organic or fundamental rights, or whether the order is merely arbitrary without sufficient support in the evidence. Florida Motor Lines Corp. v. Douglass, 1943, 150 Fla. 1, 7 So.2d 843.
In the prior section of this opinion we determined the regulations herein challenged are within the scope and power of the Commission's authority and are not illegal *891 as a matter of law. Further, we have disposed of the contention that they will, in their operation, violate an organic or fundamental right.
This leaves us only with the determination of whether the order was made in violation of procedure or without a basis in the evidence. Section 350.12(m), which is applicable to the instant case, provides in part:
"Every rule, regulation, schedule or order heretofore or hereafter made by the commissioners shall be deemed and held to be within their jurisdiction and their powers, and to be reasonable and just and such as ought to have been made in the premises and to have been properly made and arrived at in due form of procedure and such as can and ought to be executed, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary so appears. All presumptions shall be in favor of every action of the commissioners and all doubts as to their jurisdiction and powers shall be resolved in their favor, it being intended that the laws relative to the railroad commissioners shall be deemed remedial laws to be construed liberally to further the legislative intent to regulate and control public carriers in the public interest."
The petitioners have the burden of showing that the challenged orders are illegal or unauthorized and do not accord with the essential requirements of the law. Great Southern Trucking v. Douglass, 1941, 147 Fla. 552, 3 So.2d 526.
From our examination of the record two facts are manifestly evident. First, the findings and conclusions of the Commission are based on abundant competent substantial evidence. Before issuing the order herein contested, the Commission received a great wealth of testimony from the various parties concerned, including representatives of petitioners herein.[5]
Second, the petitioners have failed to show with any degree of clarity that a valid reason exists to set aside these orders.
The record discloses no basis in law or fact which can be said to support petitioners' contention that these rules discriminate between household goods carriers and other types of carriers or between those household goods carriers engaged in interstate commerce and those engaged in intrastate commerce.
The petition for certiorari is denied.
TERRELL, C.J., and THOMAS, THORNAL and O'CONNELL, JJ., concur.
NOTES
[1] The domiciliary rule and the definitions of "household goods carrier" and "domiciling motor vehicle equipment" are identical to those found in Order 4241. However, the leasing rule was modified in the later order. Order 2791 contained no rule regulating the activities of agents.
[2] "Rule 2. Leasing of Motor Vehicles

"(A) A household goods carrier may lease motor vehicles from others only under the following conditions, to-wit:
"(1) To replace motor vehicles disabled or undergoing repair in accordance with Commission Rule 26 governing motor carriers generally, when such vehicle is leased to complete the transportation of a shipment which was originally destined to move upon such disabled vehicle.
"(2) To augment its motor vehicle equipment when and only when the lease of a vehicle is in writing and is for a period of not less than ninety (90) days.
"(B) All vehicle leases shall provide that the lessee-carrier assumes full and complete responsibility and liability for the operation of the leased vehicle and for all cargo transported thereon during the term of the lease. All leased vehicles shall comply fully with the rules and regulations of the Commission.
"(C) During the term of such lease the leased vehicle shall not be sub-leased and the lessee household goods carrier shall not allow said vehicle to be used for any transportation other than transportation performed by said lessee-carrier or its agent in the name of and for lessee-carrier.
"(D) Each household goods carrier upon entering into a lease of a motor vehicle or vehicles, shall file a copy of such lease with the Commission within ten (10) days after execution thereof and shall at all times keep on file with the Commission a complete list of all leased vehicles showing the identification of the vehicle, the name of the lessor and the place where such vehicle is stationed.
"(E) An executed copy of the lease under which a vehicle is operating shall be carried on such vehicle at all times."
[3] "Rule 3. Domiciling Equipment

"Household goods carriers may not domicile motor vehicle equipment, either carrier owned or leased, at any place other than their principal place of business as shown by the original authority or by the original application therefor, issued to such carrier or its predecessor by this Commission without having obtained specific authority from this Commission to so do. Authority to domicile equipment at a location other than the principal place of business of such carrier will be granted by this Commission only after application therefor and proof of public convenience and necessity at a public hearing held on the application. All of such applications will be for extension of such carriers' certificates of public convenience and necessity to authorize the additional domiciling of equipment."
[4] "Rule 4. Agents

"(A) Every household goods carrier shall register and keep on file with the Commission the correct name, mailing address and location of each of its agents in the State of Florida.
"(B) A household goods carrier may not register or have more than one agent in a municipality, town or community and an agent shall be the agent of only one household goods carrier.
"(C) The Commission may at any time inquire into and investigate the fitness of any agent registered by such carrier under these rules. If it finds such agent to be unfit in the public interest to represent the carrier principal in services to the public it may disapprove the registration of such agent and thereafter said carrier principal shall not allow such person, firm or corporation to act as its agent.
"(D) A household goods carrier shall not transport any shipment solicited or accepted for shipment by one other than its registered agent or a full time employee of such carrier or such agent, provided, however, this shall not prevent household goods carriers as defined by these rules from interlining shipments with each other."
[5] It is interesting to note that during the course of the hearings held prior to the issuance of Order 4241, Fogarty Brothers Transfer Inc. filed certain suggested revised rules and regulations which are very similar to those actually adopted by the Commission in its disputed order. In both the Fogarty rules and the adopted rules the definitions are identical. The rules proposed by Fogarty on the subject of agents and leasing were substantially similar, although the adopted leasing rules are more extensive than those proposed by Fogarty. The major difference is that Fogarty's proposed rules contained no provision on the subject of domiciling equipment. All of the petitioners herein except Weathers Brothers testified in favor of Fogarty's proposed rules. Weathers Brothers offered no testimony whatsoever. It is further interesting to note that the domicile rule herein challenged is identical to the one contained in the Commission's prior Order 2791 which was adopted on December 30, 1952.