331 So.2d 308 (1976)
FLORIDA RETAIL FEDERATION, INC., a Florida Corporation Not for Profit, Petitioner,
v.
William T. MAYO et al., Respondents.
No. 48194.
Supreme Court of Florida.
April 14, 1976.
*309 George B. Stallings, Jr., Jacksonville, for petitioner.
William L. Weeks, Prentice P. Pruitt and Donald R. Alexander, Tallahassee, for the Florida Public Service Commission.
Hugh C. Macfarlane of Macfarlane, Ferguson, Allison & Kelly, James F. Bell, Tampa, and John Robert Jones, Columbus, Ohio, for Gen. Tel. Co., of Fla.
SUNDBERG, Justice.
This matter is before us on petition for writ of certiorari to the Florida Public Service Commission. Petitioner seeks to have reviewed certain portions of Order No. 6832 issued by the Florida Public Service Commission (Commission) on August 11, 1975. This order was reaffirmed in all respects by Order No. 6950, which denied rehearing on the earlier order and was entered on October 7, 1975.[1]
*310 On December 2, 1974, Respondent General Telephone Company of Florida (General) filed with the Commission its petition for intrastate rate relief under Section 364.05, Florida Statutes. The petition asked for an allowance of some $73.8 million in additional annual gross intrastate operating revenue and to make permanent the new rate schedules designed to effectuate that increase.
Petitioner, a non-profit corporation representing retail establishments which are customers of General, moved to intervene on June 17, 1975, which was within seven days of the commencement of the hearing for cross-examination. The petition was granted. Petitioner did not attack the rate base or rate of return suggested by General but challenged only its proposed rate structure. Petitioner's principal contention was that the "value of service" principle on which that structure was based is arbitrary, unfair, and generally less desirable as a rate-making basis than a system based on "cost of service" as the principal criterion. (Essentially, "value of service" seeks to apportion rates in such a way that those phone users who receive most commercial benefit from use of the telephone pay a higher rate than would be charged them if tariffs were assessed on the basis of what it actually cost General to maintain a given type of service. Retailers are obviously among those whose rates are higher under a "value of service" system than under "cost of service.") Charging General with forcing commercial customers to pay a disproportionate share of total system revenues, petitioner concluded by attacking (1) the relative usage ratios (or rate differentials) formulated by General between certain customer classes and (2) the lack of evidence adduced to support the specific value of service relationships upon which rates were based.
After the public hearings, testimony and argument were concluded, on August 11, 1975, respondent Commission issued its Order No. 6832, which, inter alia, granted General's petition in part, consenting to rate schedules designed to generate $46,614,000, and ordered General to file such revised schedules consistent with the relief allowed. As indicated above, petitioner's request for rehearing was denied in Order No. 6950 dated October 7, 1975.
Petitioner basically asserts that (i) the Commission denied the petitioner procedural due process of law by failing to comply with certain procedural requirements allegedly imposed by Chapter 120, Florida Statutes, enacted by Chapter 74-310, Laws of Florida 1974, as amended by Chapter 75-191, Laws of Florida 1975; and (ii) the Commission acted unlawfully in approving a rate structure based upon the proposal submitted by General. This second issue is subdivided by petitioner into two arguments. The first is that the Commission erred in its reliance upon a Traffic Usage Study submitted by General in compliance with the Minimum Filing Requirements of the Commission. Second, it is argued that the Commission erred in failing to include a "cost of service" factor or criterion in developing the rate structure as opposed to "value of service" and relationship of rates criteria. For the reasons hereinafter stated, we conclude that the Commission neither denied petitioner procedural due process of law nor failed to comply with the requirements of law in rejecting the "cost of service" principle as a necessary criterion in adopting the rate structure.
With respect to the procedural due process issue the Commission contends and we agree that the provisions of Chapter 120, Florida Statutes, relied upon by petitioner were not applicable to this proceeding. In 1974 the Legislature revised Chapter 120 through the enactment of Chapter 74-310, Laws of Florida. Section 3 of that enactment provides in pertinent part:
"(2) All administrative adjudicative proceedings begun prior to the effective date of this act shall be continued to a conclusion under the provisions of the Florida Statutes, 1973; except that administrative *311 adjudicatory proceedings which have not progressed to the stage of a hearing may, with the consent of all parties and the agency conducting the proceeding, be conducted in accordance with the provisions of this act as nearly as is feasible."
Section 6 of Chapter 74-310, Laws of Florida, established the effective date for the various provisions of the act as follows:
"Section 6. Sections 120.54(9) and 120.65, Florida Statutes, and section 2 of this act shall take effect October 1, 1974. The remainder of this act shall take effect January 1, 1975."
The sections of Chapter 120, Florida Statutes, relied upon by petitioner all fall within the category specified to take effect January 1, 1975.
The proceedings herein were begun on December 2, 1974, and proceeded to a conclusion pursuant to the provisions of Chapter 120, Florida Statutes 1973. Our review of the record reflects no consent by the parties or the Commission to conduct the proceedings in accordance with the Administrative Procedure Act as enacted by Chapter 74-310, Laws of Florida, and amended by Chapter 75-191, Laws of Florida. Our review of the procedures utilized by the Commission in the instant case satisfies us that petitioner was accorded procedural due process under the law applicable to the proceedings.
Turning now to the substantive issues raised by petitioner, we commence our task by noting that in a proceeding such as this the burden is upon the petitioner to establish that the order of the Commission under attack is invalid, arbitrary, or unsupported by the evidence. Shevin v. Yarborough, 274 So.2d 505 (Fla. 1973); City of Miami v. Fla. Public Service Comm'n, 208 So.2d 249 (Fla. 1968); Fogarty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883 (Fla. 1959). Relying upon certain testimony of one of General's witnesses (Mr. E.E. Wilson, who is responsible for operations for General) at page 2579 of the transcript, petitioner attacks the statistical reliability of a Traffic Usage Study made by General in compliance with the Minimum Filing Requirements of the Commission. It is asserted that Mr. Wilson's testimony invalidates the Traffic Usage Study in that it indicates that the usage ratio developed therein between different classes of service was measured on inconsistent bases; i.e., calling volume in one group was measured only by outward calls, a second group by inward calls and the third group by inward and outward calls. General takes exception to the inference drawn by petitioner from the testimony, maintaining that Mr. Wilson inaccurately stated the method of measurement through confusion. More importantly, however, General points out that the testimony of W.G. Marks, Jr., the rate design witness for General, reflected that the Traffic Usage Study was based upon the total usage of the line, a method which encompasses both incoming and outgoing calls as to each class of service. General submits that the testimony of Mr. Marks should be given greater weight because he was the individual responsible for the rate design. We have here then, at best, a conflict in the evidence  a matter which it is the responsibility by law for the Commission to resolve. If there is competent substantial evidence to support the Commission's conclusion with respect to the reliability of the Traffic Usage Study, then this Court will not re-evaluate the evidence upon review of the Commission's order even though we might come to a contrary conclusion if we were to engage in such re-evaluation. Our function in this regard is concisely stated in General Tel. Co. v. Carter, 115 So.2d 554, 557 (Fla. 1959), where Mr. Justice Hobson stated:
"... On certiorari this Court will not undertake to re-weigh or re-evaluate the evidence presented to the administrative body whose order is under examination. *312 Our duty is to examine the record to determine whether the Commission's order is in accord with the essential requirements of law and whether the agency had before it competent substantial evidence to support its findings and conclusions." (footnote omitted)
Petitioner next posits that the Order of the Commission fails to comply with law because the Commission relied merely upon the "value of service" and the relationship of rates as the primary tools in setting the business telephone rates of which petitioner complains and omitted as an essential criterion the "cost of service" provided. Petitioner asserts that Section 364.03, Florida Statutes, requires that all rates, tolls and charges of telephone companies in Florida for services rendered "shall be fair, just, reasonable and sufficient." It is argued that a rate structure designed without reference to "cost of service" cannot meet the requirement of sufficiency as mandated by the statute. Petitioner supports its argument by reference to a text[2] and to the orders of the regulatory agencies of various other jurisdictions.[3] Unquestionably these authorities indicate that "cost of service" is to be considered as an essential element in designing a rate structure. Respondents counter with the argument that the approach adopted by regulatory authorities in other states is neither compelling nor binding upon the Florida Public Service Commission. They cite Garfield and Lovejoy, Public Utility Economics (1964) as being exactly contrary to the conclusion reached by Bonbright and point out that petitioner fails to cite any judicial decision of another state which concludes that it is error to fail to consider "cost of service" as an essential element. In fact, respondents cite Globe Metallurgical Div. v. Public Util. Comm'n, 40 Ohio St.2d 40, 319 N.E.2d 360 (1974), as authority for the proposition that where there is no statutory requirement necessitating that a state public service commission make "cost of service" determinations relative to specific rate classifications, failure to make such findings is not error. Respondents point to the fact that although there is no reference in the Florida Statutes to a "cost of service" factor, Section 366.041(1), Florida Statutes, explicitly authorizes the Commission to give consideration, inter alia, to "the value of such service to the public." They add that, in fact, although "cost of service" was not computed with mathematical precision with respect to a particular class or grade of service, nonetheless testimony of Mr. Marks indicates that "relative cost considerations of providing service" were taken into account in designing the rate structure.
It is our view, based upon the authorities cited herein with respect to our function in reviewing an order of the Commission, that petitioner has not met the burden incumbent upon it of showing that such order is "invalid, arbitrary, or unsupported by the evidence." Obviously, there is a divergence of expert opinion as to the policy of including "cost of service" as an essential element in designing a rate structure. Even were we persuaded to one policy or the other ("cost of service" or "value of service" as the essential element) it is not our prerogative to impose that policy upon the Commission. So long as the policy adopted by the Commission comports with the essential requirements of law we may not meddle. The Legislature has reposed in the Commission the responsibility to make just the kind of choice between competing policies in its area of expertise as it *313 has done here. Shevin v. Yarborough, supra.
Accordingly, the petition for writ of certiorari is denied.
It is so ordered.
OVERTON, C.J., and ROBERTS, BOYD and HATCHETT, JJ., concur.
NOTES
[1] Order No. 6950 reads in pertinent part:

"By Order No. 6832, dated August 11, 1975, we granted in part the Petition of General Telephone Company of Florida and authorized it to increase its rates and charges in the amount of $46,614,000. Thereafter, Florida Retail Federation (FRF), an intervenor in this proceeding, filed a Petition for Rehearing of Order No. 6832 in which it questions the tariff revisions required by Order No. 6832. Oral argument on the Petition was heard by the Commission on September 8, 1975, in Tallahassee, Florida. After considering said Petition, the record herein, and argument of counsel, we find the Petition to be without merit and the same should be denied.
"Basically, Petitioner contends the rate schedules, as revised, are unjust and unreasonable as they relate to business customers. Specifically, FRF questions the rotary line differential of 1.4 times the business one-party rate and the private branch exchange trunk differential of 2 times the business one-party rate and the use of value of service as a tool in designing said rates. We cannot agree that the use of this factor in designing business telephone rates is improper. This question was presented to the Supreme Court of Florida and the proposition rejected in the case of State v. Bevis, 283 So.2d 348 (Fla. 1973). There, the Court approved our use of the value of service and the relationship of rates as the primary tools in setting certain business telephone rates. The Petitioner has also questioned the statistical reliability of the traffic study conducted by the Company as required by the Minimum Filing Requirements... . FRF contends the Company failed to measure all classes of service uniformly and thus relied upon statistically unsound methods to derive its rotary and PBX trunk differentials. We cannot agree that the study presented by the Company fails to reasonably measure the usage necessary to develop reasonable and just business rates (see, for example, TR 2331 et seq). The rates which we have approved result, in our opinion, in fair, just reasonable and sufficient rates as required by Chapter 364, Florida Statutes. We find, then, the Petition for Rehearing of Order No. 6832 to be without merit and the same should be denied... ."
[2] Bonbright, Principles of Public Utility Rates (1961).
[3] E.g., Re Pacific Tel. & Tel. Co., 77 P.U.R. 3d 1 (Cal.Pub.Util.Comm'n 1968); Re Mountain States Tel. & Tel. Co., Opinion filed January 12, 1976, Order No. 3274(C) (N. Mex.St.Corp.Comm'n); Re Mountain States Tel. & Tel. Co., 2 P.U.R. 4th 332 (N.Mex.St. Corp.Comm'n 1973); Re New England Tel. & Tel. Co., 94 P.U.R.3d 476 (R.I.Pub.Util. Comm'n 1972); Re New England Tel. & Tel. Co., 99 P.U.R.3d 309 (Vt.Pub.Serv.Bd. 1973).