336 So.2d 548 (1976)
INTERNATIONAL MINERALS AND CHEMICAL CORPORATION and Agrico Chemical Company, Petitioners,
v.
William T. MAYO et al., Respondents.
MOBIL CHEMICAL COMPANY, Petitioner,
v.
William T. MAYO et al., Respondents.
Nos. 47731, 47732.
Supreme Court of Florida.
June 4, 1976.
*549 Wilfred C. Varn, Joseph C. Jacobs, C. Everett Boyd and LeRoy Collins, of Ervin, Varn, Jacobs & Odom, and Kenneth R. Hart and Roy C. Young, of Brown, Smith, Young & Pelham, Tallahassee, for petitioners.
William L. Weeks, Prentice P. Pruitt and Donald R. Alexander, Tallahassee, for respondents.
D. Fred McMullen, Lee L. Willis and James D. Beasley, of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Tampa Electric Co.
Woodie A. Liles, Public Counsel, Lakeland, and Donald W. Weidner, Deputy Public Counsel, Tallahassee, for the Citizens of the State of Florida, intervenors.
SUNDBERG, Justice.
Tampa Electric Company (TECO) initiated proceedings, Docket No. 74597-EV, before the Public Service Commission (PSC), by filing a petition for rate increases. Public Counsel intervened in the proceedings before the PSC, as did the International Minerals and Chemical Corporation (IMC), Agrico Chemical Company (Agrico) and Mobil Chemical Company (Mobil). The PSC granted TECO's petition for rate increases in Order No. 6681. IMC, Agrico and Mobil petitioned the PSC for rehearing. Without questioning the propriety of the aggregate increase in TECO's revenues, they maintained that they and other industrial users similarly situated would be required to pay an unfair share under the new rates. The PSC rejected this contention and denied the petition for rehearing in Order No. 6717.
IMC and Agrico, who are billed by TECO at its "interruptible mining" rate, filed a joint petition for writ of certiorari in this Court to review the PSC's orders (Case No. 47,731). Mobil buys some electricity under the "interruptible mining" rate, like IMC and Agrico, but pays for other electricity at TECO's "interruptible furnace" rate; Mobil filed its own separate petition for writ of certiorari (Case No. 47,732). The petitions were consolidated *550 for argument, and public counsel and TECO have been granted leave to intervene as respondents in proceedings here. We now deny the petitions for writ of certiorari.
The corporate intervenors before the Commission, petitioners here, are phosphate companies. Their operations require large amounts of electricity, but may be shut down on short notice without serious consequences. Because the magnitude of its peak load is an important factor in TECO's cost of generating electricity, TECO offers a special rate to industrial users like IMC, Agrico and Mobil who agree to forego electricity when other users' consumption is greatest. Under the new rates set by the PSC, interruptible mining customers only pay approximately 55 per cent as much for electricity as residential customers pay.
IMC, Agrico and Mobil complain that the rates they pay are unfairly high, notwithstanding that they are lower than other customers' rates. The evidence adduced before the PSC tended to show that TECO gets a better return on investment when it sells electricity to petitioners, than when residential and other users buy electricity from TECO. In support of its petition for rate increases, TECO submitted a cost of service study in which it allocated costs among different categories of ratepayers, then calculated rates of return under the increase in revenues it proposed. According to the cost of service study, which assumed the distribution among rate classes that TECO requested,[1] the rate of return on electricity sold at the proposed residential rate would have been 8.13 per cent, as compared to 10.7 per cent for interruptible furnace users, and 15.43 per cent for interruptible mining users. TECO's over-all return on investment would have been 9.55 per cent.
When the PSC sets electric company rates, it acts pursuant to the authority conferred by Section 366.041(1) Florida Statutes, which provides that the
"Florida Public Service Commission is authorized to give consideration, among other things, to the efficiency, sufficiency, and adequacy of the facilities provided and the services rendered, the value of such service to the public, and the ability of the utility to improve such service and facilities; provided that no public utility shall be denied a reasonable rate of return upon its rate base in any order entered... ."
Petitioners' principal contention is that the PSC erred in fashioning the new rate structure, to the extent that it took into account factors other than "actual differences in the costs of serving the customers." Brief of Petitioners, p. 34. They maintain that there was no substantial evidence to support application of any ratemaking factor other than cost, and that, in any event, the Florida and United States Constitutions, as well as the pertinent regulatory statutes, require the Commission to base rate differentials exclusively on differential costs.
We recently considered a related proposition in Florida Retail Fed'n Inc. v. Mayo, 331 So.2d 308 (Fla. 1976). Under review there were certain PSC orders setting telephone rates. The rate schedules were assailed by an association of retail merchants, on the ground that commercial rates were unfairly higher than private rates. The merchants "argued that a rate structure designed without reference to `cost of service' cannot meet the requirement[s] ... mandated by [Section 364.03, Florida Statutes]," Florida Retail Fed'n, Inc. v. Mayo, supra, 331 So.2d at page 312, which requires that telephone and *551 telegraph rates be "fair, just, reasonable and sufficient." Section 364.03(1), Florida Statutes (1975). We held that the PSC had not "failed to comply with the requirements of law in rejecting the `cost of service' principle as a necessary criterion in adopting the rate structure." 331 So.2d at 310. The Florida Retail Federation case establishes that the Public Service Commission has the responsibility and authority to decide whether to give any consideration at all to the relative costs of providing different types of telephone service, when setting differential rates.
In the present case differential costs were taken into consideration when rates were set, but petitioners insist, urging both constitutional and statutory grounds, that differential costs must be the only factor taken into consideration in setting differential rates. After our decision in Florida Retail Fed'n, Inc. v. Mayo, supra, to the effect that the PSC legally is not compelled to apply the "cost of service" criterion, this position is clearly untenable. Although the statutes governing regulation of telephone and telegraph companies are not the same statutes as those providing for the regulation of gas and electricity companies, both chapters contain substantially similar criteria for setting rates.[2]
In Florida Retail Fed'n, Inc. v. Mayo, supra, respondents complained "because the Commission relied merely upon the `value of service' and the relationship of rates" at page 310, while petitioners here complain because the PSC placed reliance upon factors other than differential costs.
Practical considerations also militate against making cost of service the exclusive criterion in rate setting. Virtually every court considering the matter has rejected out of hand a rule that would reduce ratemaking to an exercise in cost accounting. E.g., Apartment House Council of Metropolitan Washington, Inc. v. Public Serv. Comm'n, 332 A.2d 53 (D.C.App. 1975); Apartment House Council of Metropolitan Washington, Inc. v. Potomac Elec. Power Co., 215 Va. 291, 208 S.E.2d 764 (1974); Globe Metallurgical Div. of Interlake, Inc. v. Public Util. Comm'n, 40 Ohio St.2d 40, 319 N.E.2d 360 (1974). The Globe Metallurgical case is clearly on point and persuasive on the issue before us as framed by the Ohio Supreme Court:
"The question is whether the commission's company-wide rate increase allowance for Ohio Power is unreasonable or unlawful as applied to the class of interruptible power customers.
"Appellants, as users of interruptible power, do not attack the propriety of the over-all rate increase. They contend, however, that the increase, as applied to their classification, is improper .. ." 319 N.E.2d at 361.
That court rejected the interruptible power users' contention that differential rates must be pegged to differential costs. As noted by the court, the provision of the Ohio Revised Code relating to matters to *552 be considered by the Ohio regulatory authority made no reference to "cost of service" considerations.[3] Similarly, Section 366.041(1), Florida Statutes, makes no such reference.
In New York v. United States, 331 U.S. 284, 67 S.Ct. 1207, 91 L.Ed. 1492 (1947), the majority opinion quoted a commentator who characterized the cost accounting approach as "impossible":
"Now and then a hardy soul, equipped with simple faith and a calculating machine, essays the adventure of rates based upon the true costs of particular services. The feat is, of course, technically impossible, for value judgments or empirical rules are essential to the distribution of overhead." 331 U.S. at 335 n. 33, 67 S.Ct. at 1234, 91 L.Ed. at 1529 n. 33.
Under petitioners' view, exercise of the Commission's discretion would be limited to deciding whether costs had been allocated in accordance with accepted accounting principles. Section 366.05, Florida Statutes, and like statutory provisions evidence a legislative intent to confer a much broader discretion on the Commission. Factors like those testified to by TECO's expert, viz., "rate history and experience of the utility, the consumption and load characteristics of the various classes of customers, value of service, public acceptance of rate structures which have been in effect in the past without serious dissatisfaction, and conservation of energy" were all properly considered by the PSC, even though these factors are not specified by statute.
Conceding for purposes of argument that the PSC may lawfully consider factors other than cost of service, petitioners say no evidence was adduced in these proceedings that would justify application of any ratemaking factor other than cost. Extensive expert opinion testimony belies this contention, particularly the testimony of Mr. Campbell, Director of Rates and Research for Tampa Electric Company. One of several specific factors relied on by the Commission and amply developed in this voluminous record is "value of service", i.e., what electricity is worth to the customer. Witnesses pointed out that large industrial users like petitioners have the possibility of generating their own electricity, and presumably would do so if they could not buy electricity for less than the cost of generating it.
Another specific factor is the principle of rate continuity. Whatever may be the significance of this principle generally, a very strong case was made in these proceedings for honoring residential consumers' expectations as to electricity rates. Testimony was adduced to the effect that TECO had taken affirmative steps, mostly by advertising, to encourage residential users to increase their use of, and reliance on, electricity. The new rate structure comes closer than the old rate structure, moreover, to establishing equal rates of return for all rate classes. See State v. Bevis, 283 So.2d 348 (Fla. 1973).
Both by statute[4] and its own rules[5] the PSC is required to make findings of *553 fact in rate proceedings. Village of North Palm Beach v. Mason, 167 So.2d 721 (Fla. 1964); Central Truck Lines, Inc. v. King, 146 So.2d 370 (Fla. 1962). The Commission made such findings in the present case. The requirement of explicit fact findings makes for more careful consideration by the Commission, helps assure that this Court does not usurp the PSC's fact finding prerogatives, and otherwise facilitates review of Commission orders by this Court. The more detailed the PSC's findings of fact are, the more readily these important purposes are served. Although we are constrained to agree with petitioners' characterization of some of the findings in the present case as "mere conclusions and generalizations," we reject petitioners' contention that the fact findings as a whole fail in their intended function.
It was for the agency fact finders to assess the reliability of the testimony and other evidence adduced. On review here, the PSC's findings of fact will not be disturbed, if those findings are supported by substantial evidence. The evidence need not be such as to compel the result reached by the PSC, so long as it is not so insubstantial that it does not support the result. As we recently said:
"When orders of the Public Service Commission are challenged in this Court as being unsupported by the facts, this Court will uphold the orders even though it differs with the Commission's view as to the effect of the evidence as a whole, so long as there is competent substantial evidence to support the orders." [Citations omitted] Chicken 'N' Things v. Murray, 329 So.2d 302 (Fla. 1976).
No question has been raised as to the competency of the opinion testimony or of any of the other evidence relied on by the Commission. Accordingly, we "will not undertake to re-weigh or re-evaluate the evidence presented." General Telephone Co. v. Carter, 115 So.2d 554, 557 (Fla. 1959).
The petitions for writ of certiorari are denied.
ROBERTS, Acting C.J., and ADKINS, BOYD and ENGLAND, JJ., concur.
NOTES
[1] The aggregate increase actually awarded TECO by the PSC was less than the amount requested, but the increase was distributed among rate classes in approximately the same proportions as TECO had suggested.
[2] Telegraph and telephone rates "shall be fair, just, reasonable and sufficient," Fla. Stat. § 364.03(1), and, when rate adjustments are necessary, "the commissioners shall determine the just and reasonable rates." Fla. Stat. § 364.14(1). Telegraph and telephone companies are forbidden to "give any undue or unreasonable preference or advantage to any person or locality," Fla. Stat. § 364.10, and, in general, may not charge more for transmitting a message "for a shorter than for a longer distance over the same line, in the same direction, within this state ... or charge any greater compensation for a through service than the aggregate of the intermediate rates." Fla. Stat. § 364.11. Gas and electric rates must be "fair and reasonable," Fla. Stat. § 366.03, and, when rate adjustments are necessary because the rates are "unjust, unreasonable, insufficient, or unjustly discriminatory or preferential," Fla. Stat. § 366.07, "the commission shall have the authority to determine and fix fair, just and reasonable rates." Fla. Stat. § 366.06(2).
[3] § 4909.15, Ohio Rev.Code, provides that the Ohio Public Utilities Commission shall set rates

"... with due regard among other things, to the value of all property of the public utility actually used and useful for the convenience of the public, excluding from such value the value of any franchise or right to own, operate, or enjoy the same in excess of the amount, exclusive of any tax or annual charge, actually paid to any political subdivision of the state or county, as the consideration for the grant of such franchise or right, and excluding any value added to such property by reason of a monopoly or merger, with due regard to the necessity of making reservation out of the income for surplus, depreciation, and contingencies, and with due regard to all such other matters as are proper, according to the facts in each case... ." Although the Ohio statute is more explicit in defining "rate base," it does not differ substantially from Fla. Stat. § 366.041(1), which is set forth in pertinent part at p. 4.
[4] Fla. Stat. § 120.57(1)(b)8 (1975).
[5] Fla. Admin. Code, ch. 25-2.116(5).