435 So.2d 784 (1983)
CITIZENS OF THE STATE OF FLORIDA, Appellant, Cross-Appellee,
v.
PUBLIC SERVICE COMMISSION and Florida Power and Light Company, Appellees, Cross-Appellants.
No. 61619.
Supreme Court of Florida.
July 14, 1983.
Jack Shreve, Public Counsel, and Stephen C. Burgess and Stephen Fogel, Associate Public Counsels, Tallahassee, for Citizens of the State of Florida, appellant, cross-appellee.
William S. Bilenky, Gen. Counsel, Joseph A. McGlothlin, Legal Director, and Paul *785 Sexton, Staff Counsel, Tallahassee, for Fla. Public Service Com'n.
William B. Killian, Matthew M. Childs and Patricia A. Seitz of Steel, Hector & Davis, Miami, for Fla. Power & Light Company.
ADKINS, Justice.
Public Counsel for the state of Florida asks us to review a rate increase awarded to Florida Power and Light Company (FP & L) by the Florida Public Service Commission (Commission). The only aspects of the Commission's decision which are challenged by Public Counsel are the Commission's use of a year-end rate base to establish interim rates and the allowance of the full amount of FP & L's rate case expense in the test year. On cross-appeal, FP & L asks us to review the Commission's denial of an attrition allowance and it's exclusion of categories of properties from the rate base.
In January of 1981, FP & L petitioned the Commission for a $476 million annual rate increase based upon a projected 1981 test year. Pursuant to the Commission's authority under section 366.06(3), Florida Statutes (Supp. 1980), the Commission suspended the proposed rates which accompanied the petition and directed that additional proceedings be conducted concerning the merits of FP & L's request. FP & L also filed a request for interim relief under section 366.071, Florida Statutes (Supp. 1980), in February of 1981 requesting a $51 million base rate increase and an attrition allowance of $160 million or a total annual amount of $211 million based upon the 1980 average rate base. Alternatively, FP & L asked for an interim increase of $220 million based upon the same projected 1981 test year upon which its permanent request was based.
After hearing oral argument on FP & L's contention that interim rates could be awarded pursuant to section 366.06(3) or section 366.071, the Commission granted FP & L approximately $148 million in interim rates on an annual basis based upon an historic year-end rate base. (Order No. 9941). Following twelve days of hearings in which evidence was taken, the Commission issued Order No. 10306 on September 23, 1981, granting FP & L an increase in annual revenues of approximately $257 million. The order specified that no refund of the interim award would be required. FP & L and Citizens filed separate petitions for reconsideration. On December 12, 1982, both petitions were disposed of and denied as to their requests on rate case expense. (Order No. 10467).
In January of 1982, Public Counsel filed this appeal to Order No. 10306 and FP & L filed a cross-appeal. A motion to dismiss the cross-appeal was denied by this Court on March 8, 1982.
Public Counsel for the state of Florida seeks review of the Commission's use of a year-end rate base to establish interim rates. Rate base is the total amount which a utility has invested in capital items to provide its service to the public. The ratio of the company's net income to its rate base provides its rate of return. Since the level of investment reflected on the company's books may vary during its test year period, the rate of return is susceptible to variations attributable to the choice of an average or a year-end rate base. Public Counsel contends that the Commission's decision to employ a year-end rate base contravenes this Court's directive enunciated in Citizens of Florida v. Hawkins, 356 So.2d 254 (Fla. 1978) (hereinafter referred to as Gentel). Public Counsel argues that Gentel permits use of a year-end rate base only as a growth factor and only when evidence reflects extraordinary growth. He also argues that the Commission never made the necessary finding of extraordinary growth in this case.
The Commission's order notes that the Gentel case was based upon the authority which existed prior to the adoption of section 366.071(5) in 1980. The order further states that the statute clearly empowers the Commission to utilize an end-of-period investment base for interim purposes. Order No. 10306, page nos. 6 & 7. Section 366.071 was enacted to expand the procedures for *786 interim rate relief and complements the statutory "file and suspend" procedure of section 366.06(3), which we have utilized in previous cases. See Maule Industries, Inc. v. Mayo, 342 So.2d 63 (Fla. 1977); Citizens of Florida v. Mayo, 333 So.2d 1 (Fla. 1976).
Section 366.071(5) reads:
(5) The commission, in setting interim rates or setting revenues subject to refund, shall determine the deficiency or excess by applying:
(a) The rate of return for the public utility for the most recent 12-month period, which shall be calculated by applying appropriate adjustments consistent with those which were used in the public utility's most recent rate case and annualizing any rate changes occurring during such period but based upon an average investment rate base; or
(b) The rate of return calculated in accordance with paragraph (a) but based upon an end-of-period investment rate base.
It is apparent on its face that the statute grants the Commission absolute discretion to base an interim rate award on either an average or a year-end investment rate base. Public Counsel does not contend that the Commission lacks this discretionary authority, but suggests that generic principles of statutory construction and common law doctrines governing permanent rate proceedings mandate denial of the use of a year-end rate base in this case. We do not agree. Where the words of a statute are clear and unambiguous, judicial interpretation is not appropriate to displace the expressed intent. Heredia v. Allstate Insurance Co., 358 So.2d 1353 (Fla. 1978). Therefore, we do not feel that this statute, which is clear on its face, presents an occasion to permit interpretative principles governing different types of proceedings.
We also cannot agree with Public Counsel's contention that the Gentel case is applicable to these proceedings. Gentel involved two issues, the first of which Citizens contend is applicable to this controversy. The first issue was the consistent application of year-end rate base in granting a permanent rate increase. This Court reversed the Commission's order and held that year-end rate base should only be used when the utility is experiencing extraordinary growth. Gentel is not applicable to interim rate proceedings which are at issue here.
In granting permanent rate relief, the procedural and statutory safeguards found in the interim section, section 366.071, are not applicable. Once permanent rate relief is granted, those rates are changed without the revenues derived from those rates being subject to further hearing or refund. The contrary is true for interim relief. Any revenues derived from an interim award are collected subject to refund and the Commission may authorize the payment of interest on the interim revenue ordered refunded. § 366.071(2).
In addition, interim rates are granted upon an expedited basis with the possibility of additional hearings to follow. At the subsequent hearing elements of the award of interim relief may be addressed and further adjustments may be made at the conclusion of the hearing. § 366.071(4). Such is clearly not the case for permanent relief. Once a permanent rate award becomes final, those rates are collected free of the encumbrance of possible refund. Permanent rates may be subsequently challenged, but such challenge affects revenues prospectively collected and has no effect on revenues previously collected.
Interim awards attempt to make a utility whole during the pendency of a proceeding without the interjection of any opinion testimony. The statute removes most of the Commission's discretion in such areas as cost-of-equity capital. Interim relief is prescribed by a formula that locks the authorized rate of return to the previously authorized rate of return and mandates that any adjustment be made consistent with those authorized in the last rate case. §§ 366.071(2)(a) and 366.071(5)(a). The statute requires a grant of interim relief, if one is to be made, within sixty days of the filing for such relief. This limits the number of issues which may be initially considered in *787 granting interim relief. § 366.071(2). The Commission is, however, given twelve months to deliberate and grant a permanent award. § 366.06(3). After eight months, if the Commission has not concluded its work, the utility is required to put requested rates into effect under bond.
It is clear from a reading of the entire statute that the granting of interim relief should be done so that earnings are increased to the minimum of the previously authorized range. To accomplish this level of earnings the statute authorizes several accounting alternatives. The Commission may use a test period different from the test period used for permanent relief. § 366.071(1). Section 366.071(5) authorizes the use of either average or end-of-period investment rate base for the granting of relief. Accordingly, we affirm the Commission's order on the issue of year-end rate base to establish interim rates.
The next issue that Public Counsel raises is whether the Commission erred in allowing the full amount of FP & L's rate case expense to be included in the test year. This issue was not raised by Citizens until they petitioned for reconsideration of the Commission's final order. Thus, the issue of rate case expense was not addressed in the Commission's prehearing order or its final order.
The Commission unquestionably has the discretionary authority under the Administrative Procedure Act, chapter 120, Florida Statutes (1981), to determine issues which will be litigated in a rate proceeding, both to put parties on notice and to ensure an adequate mustering of evidence. The Commission's prehearing conference was held to provide counsel an opportunity to raise issues of concern and its prehearing order then formalized the decisions there agreed upon. Public Counsel did not take the opportunity to identify his issues either prior to or at the prehearing conference and he did not show good cause for raising this new issue after hearing.
The Commission was well within its discretionary authority in barring consideration of the rate case expense issue on the merits. Under section 120.68(12), the Court may not now substitute its judgment for the Commission's own action taken within the statutory range of discretion. See Florida Real Estate Commission v. Webb, 367 So.2d 201, 202 (Fla. 1978).
The first issue that FP & L brings to this Court for review on its cross-appeal is whether the Commission erred in denying FP & L an attrition allowance. Attrition is a term used to describe the phenomenon present when factors, other than extraordinary growth, are forcing costs upward without a concomitant increment in revenues. To combat attrition, regulatory bodies developed the concept of a separate attrition allowance.
As part of its requested revenue increase, FP & L sought an attrition allowance of approximately $69 million, which was later adjusted to $62.6 million. FP & L contends that the Commission's denial of any attrition allowance is erroneous as a matter of law. The basis of their argument is that the Commission's decision is improper in light of the fact that the Commission was provided with evidence supporting justification of the need for the allowance and data upon which it could have applied a methodology previously used by the Commission.
We have spoken time and time again of the task for this Court on judicial review of Commission orders. Our task is not to reweigh the evidence. Florida Retail Federation, Inc. v. Mayo, 331 So.2d 308, 311 (Fla. 1976); General Telephone Co. v. Carter, 115 So.2d 554, 557 (Fla. 1959). We must merely determine whether competent, substantial evidence supports a Commission order. We cannot affirm a decision of the Commission if it is arbitrary or unsupported by the evidence. Citizens of Florida v. Public Service Commission, 425 So.2d 534 (Fla. 1982); Shevin v. Yarborough, 274 So.2d 505 (Fla. 1973).
The record reveals that the Commission was presented with competing testimony on the proper treatment for attrition. Public Counsel's witness, James Dittmer, presented *788 evidence refuting FP & L's need for a specific attrition allowance. In summarizing his objections to any attrition allowance, Mr. Dittmer stated the following:
I do not feel an attrition adjustment is warranted in this case. Based on historical data, the company has experienced little erosion of earnings or attrition. The biggest cause of what attrition was incurred was caused  by the company's own admission  by the lag in fuel recovery under the old fuel adjustment clause. This deficiency has supposedly been corrected with implementation of the new fuel adjustment clause.
Secondly, the often cited "regulatory lag" which causes attrition to occur has further been alleviated by using a budgeted test year which actually overlaps the collection period.
And finally, the Company has attempted to quantify future attrition by use of a 1982 forecast. Obviously, this measurement tool is only as good as the forecast itself, such forecast having been prepared approximately one and a half years in advance, and not even having been approved by the Budget Committee. But even assuming all the components utilized were reasonably accurate, the attrition adjustment developed by the Company would still be significantly less when all the components and factors are accurately included. In summary, I feel the attrition experienced in the past, as well as projected for the future, has been overstated by FP & L. Accordingly, I feel the attrition adjustment in this case should be rejected.
The Commission relied on the testimony of Mr. Dittmer. The order stated:
We agree with those parties who expressed reservations or objections to the proposed attrition factor. We note, first of all, that the use of a projected test year reduces the need and justification for an attrition allowance. More importantly in this case, however, is the fact that the Company's methodology has failed in our opinion to provide credible evidence of what attrition should be anticipated in the 1982 timeframe. The Company has projected attrition in certain areas unlike that which it has ever experienced, and has failed to carry its burden of proving that such projections are justified. Because we find that the Company has failed to provide us with the tools with which to deal with the subject, we deny the use of an attrition allowance in this case.
The Commission obviously weighed the evidence presented on this issue. We find their decision supported by competent substantial evidence.
FP & L also asserts that the Commission's denial of any attrition allowance is contrary to this Court's directive in Citizens of Florida v. Hawkins (Gentel). This Court's ruling in Gentel is not dispositive of the issue here. In Gentel, the Court was ruling on the propriety of using a year-end rate base to combat the effects of attrition. The Court stated it would require independent determinations of growth and of attrition in future cases to insure a more workable basis on which to review rate awards. 356 So.2d at 258. The Court then held that a separate attrition allowance was the appropriate tool by which to account for all adjustments for attrition rather than using a year-end rate base. Id.
We find neither of FP & L's arguments on this issue to be persuasive. We affirm the Commission's denial of an attrition allowance in this case.
FP & L also challenges the Commission's exclusion of three categories of properties from FP & L's rate base. FP & L sought to include approximately $147.7 million which had been invested in these properties and the Commission adjusted out of rate base approximately $72.7 million of investment in Martin County dam repairs, approximately $67.8 million of investment in Turkey Point steam generator repairs, and approximately $12 million of investment in the expansion of Turkey Point's spent fuel storage facility. FP & L contends that the Commission's sole ground for adjusting these investments out of rate base was due to the fact that each property *789 was the subject of pending litigation. The company argues that this action has deprived FP & L of the opportunity to earn a fair rate of return on its investment.
The Commission, instead of including these items in rate base, authorized FP & L to compute the amount of interest associated with carrying the costs of these items until future ratemaking procedures. This "carrying cost," or AFUDC (Allowance for Funds Used During Construction), was to be capitalized and then added to the cost ultimately to be included in the plant capital accounts. If the Commission subsequently determined that the costs should be included in rate base without adjustment, FP & L would be authorized a return on the capitalized interest in addition to costs previously insured. The Commission submits that the course it followed balanced the interests of FP & L and its ratepayers and was also a course within its discretion to adopt. We agree. The arguments of FP & L fail to demonstrate an abuse of that discretion.
Thus, for the reasons stated, Order No. 10306 of the Public Service Commission is affirmed as to all issues raised by both the Public Counsel and FP & L on this appeal.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.