GRIMES, Justice.
We review an order of the Public Service Commission (Commission) relating to rates of a utility providing electric service. We have jurisdiction under article V, section 3(b)(2) of the Florida Constitution.
In 1980 the legislature enacted the Florida Energy Efficiency and Conservation Act (FEECA), sections 366.80-.85, 403.519, Florida Statutes (1989). Pursuant to FEE-CA, the Commission approves programs for electric utilities designed to reduce weather-sensitive peak demand and the growth rate in electricity usage. Program costs are recovered through a conservation cost recovery factor projected for a six-month period. Over and under recoveries are used to adjust succeeding projection periods. In February the Commission conducts hearings to set factors for the April through September period and in August holds hearings for the October through March period. Originally, the Commission decided that costs should be recovered equally from all customers on a per-kilowatt-hour basis.
On October 28, 1988, Tampa Electric Company (TECO) filed a petition for modification of its conservation cost recovery methodology. The petition requested that TECO no longer apply an energy conservation cost recovery factor to customers taking interruptible service. Interruptible customers are those customers whose service TECO can suspend during periods of peak demand. Those customers not subject to this interruption in service are referred to as firm customers.
On March 1, 1989, the Commission issued Order No. 20825 approving TECO’s petition to modify its conservation cost recovery methodology for a one-year period commencing April 1, 1989. This order was affirmed upon an appeal filed by the Office of Public Counsel (OPC). Citizens of Florida v. Wilson, 571 So.2d 1300 (Fla.1990).
On December 21, 1989, TECO petitioned to extend the provisions of Order No. 20825 through March 31, 1991. Following a hearing, the Commission entered Order No. 22812 on April 12, 1990, approving the continuation of TECO’s conservation cost recovery methodology until March 31, 1991. As the basis for its approval, the Commission’s order stated:
The record reflects that because service to interruptible customers can be interrupted during peak conditions, the utility does not build capacity for these customers. Interruptible customers thus receive no capacity deferral benefits. Further, the utility’s Exhibit 27 showed that marginal fuel cost is not expected to surpass average fuel cost until 1991. In fact, Mr. Kordecki testified that “conservation load management activities of Tampa Electric Company will actually raise the fuel adjustment per unit cost very slightly.” TECO burns spot coal on the margin, the cost of which is presently less than average cost. Thus, at this time, TECO’s interruptible customers do not receive a reduction in fuel cost, which is the other benefit generated by conservation efforts. On cross-examination, Mr. Kordecki agreed that if interruptible customers were to receive fuel savings due to conservation, they should pay their fair share of ECCR costs. He also indicated that interruptible customers would have a slight fuel savings in 1991 due to conservation, but that it would not occur until July or August, which is well after the expiration of the proposed extension.
Public Counsel argued that interrupti-ble customers receive capacity deferral benefits in that “conservation by nonin-terruptible customers makes capacity available on Tampa Electric Company’s system and reduces the likelihood that those interruptible customers would not *1270 [sic] be interrupted.” Although Public Counsel is correct, we find that this is not a quantifiable benefit which could be used to allocate conservation costs to in-terruptible customers. Public Counsel pointed out that although’ TECO’s inter-ruptible customers do not presently receive a reduction in fuel cost, neither do firm customers. However, we find that such benefits are expected to flow to both groups of customers beginning in late 1991.
(Transcript references omitted.)
Because the total burden of the costs of conservation now falls on TECO’s firm customers, the OPC filed this appeal. The OPC essentially contends that there is insufficient evidence to support the Commission’s order. The only person to testify in this proceeding was TECO’s witness, Gerald J. Kordeeki. He pointed out that there are two fundamental benefits from conservation programs. The first of these is capacity deferral, which is a benefit derived when a utility does not have to build a new plant, and the second is reduction in fuel cost. Kordeeki premised TECO’s request on the utility’s belief that “at this time, our conservation and load management programs do not accrue either capacity benefits nor fuel savings to interruptible customers.” He explained that TECO does not build capacity in anticipation of the needs of its interruptible customers. The nature of the service to these customers is that they may be interrupted during periods of peak demand, thereby eliminating the need to consider their specific capacity needs in planning to meet peak demand. Thus, interruptible customers do not receive the benefit of not having to pay for plant capacity which, but for conservation, would have been built to serve them.
Kordeeki conceded that it was possible in theory for interruptible customers to receive conservation benefits from reduced fuel costs and acknowledged that if inter-ruptible customers received calculable benefits from fuel savings they should pay conservation costs. However, Kordeeki demonstrated that since April 1, 1989, the reduced energy production brought about by conservation had actually caused the average cost of fuel to go up. He said that had not conservation reduced the need for it, more lower priced spot-market fuel would have been bought and burned, thereby lowering the average cost of fuel. On cross-examination, Kordeeki acknowledged that according to his study interruptible customers would receive slight fuel-savings benefits in 1991, but this was not projected to occur until either July or August, which was after the requested extension had expired.
In Manatee County v. Marks, 504 So.2d 763, 764-65 (Fla.1987), this Court stated:
On review of action of the Public Service Commission, this Court does not reevaluate or reweigh the evidence, but only determines whether the commission’s decision is supported by competent, substantial evidence. Citizens of Florida v. Public Service Commission, 435 So.2d 784 (Fla.1983); General Telephone Co. v. Carter, 115 So.2d 554 (Fla.1959); Fogarty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883 (Fla.1959). Conflicts in the evidence and varying interpretations thereof are for the commission to resolve. Florida Retail Federation, Inc. v. Mayo, 331 So.2d 308, 311 (Fla.1976). The burden is on the party seeking review here to demonstrate that the commission’s determination is arbitrary or unsupported by evidence. Id, at 311.
Upon review of this record, we conclude that the Commission’s order was neither arbitrary nor unsupported by the evidence.
The OPC also complains that section 120.66, Florida Statutes (1989), was violated because the Commission allowed staff members to make recommendations at the hearing. This statute is wholly inapplicable because it is directed toward ex parte communications to a hearing officer or to an agency head after receipt of a recommended order. There was no hearing officer involved in these proceedings. Further, the communications complained of by the OPC were not ex parte in that they were made at a public hearing. The OPC’s remaining arguments are without merit and need not be discussed.
*1271 We affirm Commission Order No. 22812.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, EHRLICH, BARKETT and KOGAN, JJ., concur.