443 So.2d 92 (1983)
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellant/Cross-Appellee, and
The Citizens of the State of Florida, Appellee/Cross-Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee/Cross-Appellant.
No. 62181.
Supreme Court of Florida.
December 22, 1983.
*93 Earl B. Hadlow of Mahoney, Hadlow & Adams, Jacksonville, William B. Barfield, Miami, and Drury B. Thompson and John F. Beasley, Atlanta, Ga., for appellant/cross-appellee.
Jack Shreve, Public Counsel, Benjamin H. Dickens, Jr. and Stephen Fogel, Associate *94 Public Counsels, Office of the Public Counsel, Tallahassee, for the Citizens of the State of Fla., and William S. Bilenky, Gen. Counsel, Patrick K. Wiggins, Deputy Gen. Counsel, and Susan F. Clark, Noreen Davis, Bruce W. Renard and Kathleen Villacorta, Associate Gen. Counsels, Tallahassee, for the Florida Public Service Commission, appellees/cross-appellants.
OVERTON, Justice.
This is a direct appeal by Southern Bell Telephone and Telegraph Company from an order of the Florida Public Service Commission approving, in part, Bell's petition for a rate increase for telephone service. The rate increase allowed was less than the amount Bell had requested. We have jurisdiction, article V, section 3(b)(2), Florida Constitution, and we affirm the order of the Public Service Commission.
Southern Bell filed a petition with the Public Service Commission seeking approval of rates which would increase annual revenues by $288,374,110. Bell's request was based on a test year ending July 31, 1981, which, at the time of filing, consisted of three months' actual and nine months' projected figures. Bell utilized a year-end rate base with an end-of-year factor, but did not request an attrition allowance. The Public Service Commission, in Order No. 10449, which was issued on December 15, 1981, authorized a rate increase providing Bell with $139,799,327 in additional annual revenue. The Commission utilized an average rate base rather than a year-end rate base and provided an attrition allowance in lieu of the various adjustments requested by Bell. The decision also incorporated a change in Bell's depreciation methodology. In its decision, the Commission rejected Bell's proposal to remove all investments, expenses, taxes, and revenues attributable to the company's activities in the publication and sale of yellow-page advertising. The Commission also rejected Bell's request that the company's charitable contributions be included as an operating expense for rate-making purposes.
Bell contends that the Commission erred in reducing its requested rate increase because (1) the Commission failed to make pro forma adjustments to Bell's "test year" for two major known and imminent changes amounting to $59 million in increased costs for Bell and, instead, provided an attrition allowance of $12,700,000; (2) the Commission erred in including within Bell's net operating income and rate base the investments, revenues, expenses, and taxes associated with Bell's publication of the yellow pages; (3) the Commission erred in refusing to allow Bell's charitable contributions to be treated as operating expenses; (4) the Commission erred in using an average rather than a year-end rate base; and (5) the Commission erroneously imposed a depreciation change retroactively.
The Citizens of the State of Florida were a party to the proceedings and filed a cross-appeal. In their cross-appeal, the Citizens contend that the Commission's order departed from the essential requirements of law because it based Bell's rate increase on a projected test year, which is not subject to verification by audit.
After argument of this cause before this Court, the Commission filed a suggestion of mootness. The Commission contends that Bell's points (1), (2), and (4) have been rendered moot by a subsequent rate filing by Bell and by the passage of legislation in 1983. The Citizens agree that these issues are moot. Bell agrees that the issue concerning the yellow pages has been rendered moot by new legislation but argues that points one and four are important issues for this Court to decide. We note that the Commission has not moved to moot the entire case.
We agree that the yellow-pages issue has been settled by the legislature, which has determined that investments, revenues, expenses, and taxes associated with the publication of the yellow pages are properly included in a telephone utility's net income and rate base. See ch. 83-73, § 1, Laws of Fla. This issue is, therefore, moot. No party, however, has *95 suggested that the entire case is moot and we deem it appropriate to address the issues argued before us with the exception of the yellow-pages issue.
The first point for consideration is Bell's contention that the Commission erred by refusing to make pro forma adjustments for known and imminent changes to Bell's "test year" data. A "test year" is used by rate-making bodies to measure the adequacy and reasonableness of a utility's rates. Gulf Power Co. v. Bevis, 289 So.2d 401 (Fla. 1974). According to Bell, the Commission failed to adjust its test year for two known and imminent changes amounting to $59 million in increased costs: (1) wage and benefit increases of $43 million and (2) certain increased settlement costs to independent telephone companies of $16 million. The Commission rejected Bell's argument that pro forma adjustments be made, and instead provided Bell with an attrition allowance in accordance with this Court's decision in Citizens v. Hawkins, 356 So.2d 254 (Fla. 1978). As we have previously stated, "[a]ttrition is a term used to describe the phenomenon present when factors, other than extraordinary growth, are forcing costs upward without a concomitant increment in revenues." Citizens v. Public Service Commission, 435 So.2d 784, 787 (Fla. 1983). In Citizens v. Hawkins, we determined that "all adjustments for attrition [are] to be encompassed within a separate allowance." 356 So.2d at 258. Here, the Commission heard expert testimony from its staff, from Bell, and from the Citizens on how Bell's attrition allowance should be computed. The Commission rejected the testimony offered by Bell and accepted the testimony of the Citizens' expert, and concluded that the expenses were attrition related and would be properly recognized through an attrition allowance computed at $12,700,000. It is not this Court's responsibility to reweigh the evidence in reviewing an order of the Public Service Commission. Rather, we are to determine whether the Commission's action is supported by competent, substantial evidence. We conclude that the Commission's computation of Bell's attrition allowance is supported by competent, substantial evidence.
The second point raised concerning the yellow-pages issue has been rendered moot.
With regard to the third point, Bell asserts that the Commission should have treated its charitable contributions, in the amount of $377,000, as operating expenses. Bell cites our decision in City of Miami v. Florida Public Service Commission, 208 So.2d 249 (Fla. 1968), as authority for this argument. In City of Miami, we stated:
We are of the opinion that the better concept on this matter is that ... if contributions are of a reasonable amount to recognized and appropriate charities, then they may be classified as legitimate operating expenses.
208 So.2d at 259. (Emphasis supplied.)
To support its argument that charitable contributions are customary and legitimate expenses which allow corporations to meet their fair share of civic responsibility, Bell also cites a Federal Power Commission opinion which stated:
Reasonable charitable contributions are very much an obligation of a business enterprise to the community it serves and upon which it is dependent for its revenues... . This is particularly applicable to a regulated enterprise whose identification with the public interest is instinctive in the legislation which gives rise to its regulation.
Re El Paso Natural Gas Co., 46 F.P.C. 454, 466-67, 90 P.U.R.3d 462, 473 (1971).
Bell claims that since 1977 the Public Service Commission has been inconsistent in its decisions on the charitable deductions issue and that this inconsistency is reflected by the following cases in which the Commission has allowed and disallowed charitable contributions as operating expenses of a utility: Southern Bell Telephone and Telegraph Co., PSC Order 8041 (Nov. 14, 1977) (allowed); Winter Park Telephone Co., PSC Order 8330 (June 6, 1978) (disallowed); United Telephone Co., PSC Order 9208 (Jan. 14, 1980) (allowed); Florida Telephone Corp., PSC Order 9551 (Sept. *96 17, 1980) (allowed); Tampa Electric Co., PSC Order 9599 (Oct. 17, 1980) (allowed); General Telephone Co., PSC Order 10250 (Sept. 2, 1981) (disallowed); Florida Power & Light Co., PSC Order 10306 (Sept. 23, 1981) (disallowed).
In response to Bell's argument, the Commission asserts that in September, 1981, it effectively changed its policy on the treatment of charitable contributions for ratemaking purposes. The Commission explained its position in the Florida Power & Light Company rate case, stating:
The Company has included as an operating expense $386,411 in charitable contributions. In earlier rate cases, we have held that it is within our discretion and authority to allow charitable contributions in reasonable amounts as operating expenses for ratemaking purposes, and the decision to include or exclude them is discretionary with the Commission. However, there are policy considerations which argue both for and against the inclusion of such expenses for ratemaking purposes. In this case, FP & L Witness Tallon asserted that the Company's customers are the beneficiaries of the work that charitable organizations accomplish. However, upon consideration, we disagree that such contributions are "truly contributions from the corporation" rather than from the customers. We are persuaded that such contributions are instead more in the nature of involuntary contributions by ratepayers. As a matter of policy, we do not believe such contributions should be borne by ratepayers. We note our disallowance of such contributions for ratemaking purposes does not have the effect of precluding the Company from continuing to make contributions to charities. It only requires that such contributions be borne by stockholders rather than ratepayers. Accordingly, we have removed from operating expenses the entire amount of contributions to charities projected for the test period.
PSC Order 10306 (Sept. 23, 1981).
We disagree with Bell's contention that this Court's decision in City of Miami mandates that charitable contributions be treated as an operating expense of a utility. In that case we said that "if contributions are of a reasonable amount to recognized and appropriate charities, then they may be classified as legitimate operating expenses." 208 So.2d at 259. (Emphasis deleted; emphasis added.) This language left the Commission with discretion as to whether charitable contributions are to be treated as operating expenses. The Commission has the authority to determine, as a policy issue, whether charitable contributions are to be included in the operating expenses of a public utility provided, however, that the Commission's action is not arbitrary or capricious or a violation of due process. This discretionary authority may not be implemented in an arbitrary or haphazard manner that would permit the charitable contributions of one utility to be included as an operating expense while denying such treatment to another utility. We agree with the comment of a Georgia court that
the decision to allow or disallow charitable contributions as a business expense should not be dependent upon who is sitting on the Commission at a particular time and should not be subject to the whims of individual members of the Commission... . The allowing or disallowing of this particular expenditure should be a constant, not a variable.
Southern Bell Telephone and Telegraph Co. v. Georgia Public Service Commission, No. C-75044 (Ga.Super.Ct. Sept. 21, 1981). Although there was some inconsistency between 1977 and 1981 in the way the Commission handled this issue, it appears that a clear policy of disallowing charitable contributions as an operating expense emerged in 1981.
The Commission adopted this policy in a non-rulemaking proceeding, and we find that there was adequate support in the record below for its decision. Although we believe that a rulemaking proceeding is preferable in cases like this where established, industry-wide policy is being altered, *97 the Commission is not required to institute a rulemaking proceeding every time a new policy is developed. See City of Plant City v. Mayo, 337 So.2d 966 (Fla. 1976); McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). We conclude that the Commission acted within its discretion when it disallowed Bell's treatment of charitable contributions as an operating expense. The Commission has established a policy on this issue and has not, in our view, acted in an arbitrary or capricious manner.
In point four, Bell argues that the Commission erred in requiring it to use an average rather than a year-end rate base. According to Bell, the extraordinary growth it has experienced since 1977 requires that a year-end rate base be used. We agree with the Commission that the record does not reflect the type of situation which would mandate the use of a year-end rate base. Clearly, this record does not establish that the failure to utilize a year-end rate base results in rates "so low as to be confiscatory to the utility." See City of Miami v. Florida Public Service Commission, 208 So.2d 249, 258 (Fla. 1968).
In its final point, Bell asserts that the Commission wrongfully imposed a retroactive effective date for implementing a change in Bell's method of depreciation. Bell does not dispute the change itself, but only the implementation date of January 1, 1981. The record reflects that the Commission's choice of this date is supported by competent, substantial evidence and complies with the essential requirements of law.
In its cross-appeal, the Citizens contend that basing rate relief on a projected test year departs from the essential requirements of law. We disagree. Section 364.035(1), Florida Statutes (1981), provides that the Commission has the authority to fix "just, reasonable, and compensatory rates." Nothing in the decisions of this Court or any legislative act prohibits the use of a projected test year by the Commission in setting a utility's rates. We agree with the Commission that it may allow the use of a projected test year as an accounting mechanism to minimize regulatory lag. The projected test period established by the Commission is a ratemaking tool which allows the Commission to determine, as accurately as possible, rates which would be just and reasonable to the customer and properly compensatory to the utility. We also agree with the Commission that the utility met its burden of establishing the accuracy of the test period used and that the decision to use the projected test period was supported by competent, substantial evidence.
For the reasons expressed, the order of the Public Service Commission is affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, McDONALD, EHRLICH and SHAW, JJ., concur.