BOYD, Justice.
This cause is before the Court on a petition for review of orders of the Public Service Commission. The orders in question constitute agency action relating to rates and service of utilities providing gas service. Therefore, we have jurisdiction to “review” the orders. Art. V, § 3(b)(2), Fla. Const.[1]; § 366.10, Fla.Stat. (1985).[2] The commission’s action is challenged on the grounds that it was in excess of statutory authority and that the underlying factual determinations were not supported by competent, substantial evidence. We find the arguments without merit and approve the action of the commission.
*582 The Dade County Water and Sewer Authority operates a water treatment plant that includes a kiln employed to dry the lime used in the water purification and treatment process. While the kiln was previously powered by another source of fuel, in 1983 the county authority determined to change to natural gas as a source of power for the kiln. As a result of the authority's inquiries and negotiation concerning the provision of natural gas to the facility, petitioner City Gas Company and respondent Miller Gas Company both submitted tariff filings to the Public Service Commission for its approval.[3]
Both gas companies were already serving customers in the general area of the water plant. Respondent Miller Gas Company was already providing gas service to the water plant itself, such power being used to fuel the plant’s water pumps. The proposed tariff filed by Miller Gas Company established a classification for large-volume users of interruptible service. That filed by City Gas Company proposed a special classification for service to the county government providing a preferred rate to the water treatment plant. Each company filed objections to the tariff proposal filed by the other. The commission consolidated both petitions into one proceeding, held a hearing, and issued Order No. 15268 approving the rate filed by Miller Gas Company and disapproving that filed by City Gas Company. The effect of the commission’s action is that Miller Gas is authorized to provide gas service to the lime kiln at the water treatment plant.
In Order No. 15268 the commission found the following facts:
1) The tariff of each utility contains a map or narrative that purportedly describes the service area in which each utility is obliged to provide natural gas service. Miller’s purported service area is within and completely surrounded by City’s purported service area;
2) The entire Water Plant area, to include the gas-powered water pump presently served by Miller and the lime kiln, is located within Miller’s described service area;
3) Miller is a relatively small utility having (as of December 1984) only 4,822 residential customers, 61 commercial customers and one interruptible customer. The single interruptible customer is the Dade County Water and Sewer Authority Department (WASA), which operates the Water Plant;
4) Miller has provided natural gas service to the Water Plant for over 22 years through a 4" dedicated line. In 1984, 28% of Miller’s total annual sales of 2,293,865 therms were to the WASA Water Plant. The projected combined annual demand of the water pump and lime kiln is between 2,000,000 and 3,000,000 therms;
5) City, with two natural gas sales divisions, is substantially larger than Miller. As of mid-1985, City had 68,840 *583 residential customers, 3,734 commercial/industrial customers and 28 interrup-tible customers. For the 12 months ended August, 1985, City had total sales in excess of 72 million therms;
6) WASA desires the lowest cost gas and has requested and received bids from both City and Miller. WASA intends to take service from only one natural gas company for all of its requirements at the Water Plant;
(7) The additional costs for each utility to serve the Water Plant (both lime kiln and water pumps) are:
Miller Gas City Gas
Water Pumps 0 33,000
Lime Kiln 70,475 149,000
Total $70,475* $182,000
8) In the event City were to serve all the load at the Water Plant, the “stranded [sic] investment” associated with Miller’s existing facilities to serve the WASA water pumps would be a net book value of $7,783.
The commission concluded that the rate submitted by Miller Gas was cost-justified, reasonable, and nondiscriminatory, while that proposed by City Gas was discriminatory and not cost-based. In approving the petition of Miller Gas and denying that of City Gas, the commission concluded “that Miller Gas Company is the appropriate utility to continue providing service to WASA’s water pumps and to provide natural gas service to WASA’s lime kiln when that service is required.”
City Gas filed a motion for reconsideration on the grounds that the commission failed to consider evidence establishing City Gas’s right to serve the lime kiln, failed to give effect to evidence justifying approval of City Gas’s proposed service, and failed to characterize the lime kiln as a separate and distinct new account. The commission denied this motion in Order No. 15511, finding that City Gas did not have a right to serve the lime kiln, that the evidence presented by City Gas concerning cost allocations and discriminatory impact was wanting, and that the lime kiln was not a separate and distinct new account, and even if it were, it would still be more efficient for Miller to serve both the water pumps and the lime kiln than have these services split between the two utilities.
In its petition for review, City Gas presents two arguments: (1) whether the commission abused its discretion by not approving City Gas’s interruptible rate tariff, and (2) whether the commission exceeded its statutory authority by awarding an exclusive service territory to Miller Gas. We reject the arguments presented by City Gas and therefore approve the action of the Public Service Commission.
It is not this Court’s function on review of a decision of the Public Service Commission to re-evaluate the evidence or substitute our judgment on questions of fact. Citizens of Florida v. Public Service Commission, 435 So.2d 784 (Fla.1983). If the commission acted within its authority and there is competent, substantial evidence to support the action, we must approve it. We find that the commission did not abuse its discretion in rejecting City Gas’s petition to provide interruptible gas service to the water treatment plant. In fixing the rates to be charged by public utilities, the commission is authorized to consider, among other things, “the efficiency, sufficiency, and adequacy of the facilities provided and the services rendered; the cost of providing such service and the value of such service to the public; the ability of the utilities to improve such service and facilities; and energy conservation and the efficient use of alternative energy resources.” § 366.041, Fla.Stat. (1985). The commission must also consider “the cost of providing service to the class, as well as the rate history, value of service, and experience of the utility; the consumption and load characteristics of the various classes of customers; and public acceptance of rate structures.” Id. § 366.06(1). All rates must be fair and reasonable and must not be unduly discriminatory. Id. § 366.03.
*584 City Gas argues that there was no evidence to support the commission’s finding that its proposed tariff was unduly discriminatory. Initially the proposed rate was for a special class of county governmental users of interruptible service. Because the Dade County Water and Sewer Authority would have been the only customer in this category, the proposed rate tariff was discriminatory with regard to other customers. At the hearing the proposal was amended to offer the same rate to all customers agreeing to purchase at least two million therms per year for at least two years. Based on this amendment, City Gas argues that the commission was wrong to find the tariff proposal discriminatory. The commission counters that no evidence was presented to show what impact this change in the rate would have on the costs of providing service, the financial risks, the earnings of the company and the other factors that should be considered by the commission.
We find petitioner’s argument to be without merit. The commission could reasonably conclude that City Gas’s last-minute offer to extend the special rate to other customers did not cure the discriminatory impact as there was no evidence that there would be any such customers. Moreover, we find there is competent substantial evidence to support the commission’s conclusion that City Gas’s proposal was not substantiated by a proper assessment on the allocation of costs. City Gas contends that it was not necessary to introduce into evidence a cost of service study on the ground that since the company was not earning its minimum authorized rate of return, the cost of providing the new service would not be placed on existing customers. The argument is not persuasive. For even if City Gas’s existing customers are currently being undercharged, any increase in expenditures resulting from the expansion of service, by increasing the costs of the company’s entire operation, could increase the cost of providing services to existing customers. Such an increase in costs could be used to justify a rate increase request in the future, notwithstanding the fact that City Gas is presently not seeking a rate increase. The critical issue is not whether the rates charged to other classes of customers are being affected, but whether they could be affected. Since City Gas failed to establish how its proposed tariff might affect its existing customers, the commission acted within its discretionary authority in denying the petition.
City Gas’s second point on appeal is that the commission exceeded its statutory authority by awarding an exclusive service territory to Miller Gas. Its argument is premised on the fact that section 366.04, Florida Statutes (1985), authorizes the commission to approve and disapprove territorial agreements and resolve territorial disputes among electric utilities, but says nothing about gas utilities. The commission contends that its decision to grant Miller Gas’s petition and deny that of City Gas was not based on the notion of exclusive service territory. This is shown by the original order itself which states:

Resolution of Territorial Dispute

It is not clear that this Commission has the statutory authority to either establish exclusive service territories for natural gas utilities (as it does for telephone, water and sewer utilities) or resolve territorial disputes between natural gas utilities (as specifically authorized for electric utilities). However, our resolution of this question is not necessary in view of our finding that Miller is the appropriate utility to serve WASA’s natural gas requirements for both the water pumps and the lime kiln.
Furthermore, there was additional competent substantial evidence to support the denial of City Gas’s request. The amount of additional investment needed to extend the natural gas lines to the lime kiln was greater for City Gas than it was for Miller. If City Gas were allowed to serve the lime kiln and Miller had to keep serving the water pumps at the previous, higher low-volume rate, the cost would be greater to Dade County than having all the natural gas supplied by one company and there *585 would be a duplication of gas lines. If City Gas were allowed to provide all the natural gas for the plant, then Miller would be left with a stranded investment and the operating expenses for its remaining customers would rise. In short there were numerous factors concerning efficiency and the effect the proposed tariffs would have on all the customers in the region which support the commission’s decision. We therefore find that the commission’s decision was properly based on its statutory authority to approve and disapprove proposed tariffs and was not based on the concept of an exclusive service territory.
Having found that the commission acted within its statutory authority and that its orders were supported by competent substantial evidence, we approve the action of the commission.
It is so ordered.
ADKINS, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, C.J., concurs in result only.

. Article V, section 3(b)(2), Florida Constitution, provides in pertinent part: “The supreme court ... [w]hen provided by general law ... shall review action of statewide agencies relating to rates or service of utilities providing electric, gas, or telephone service.” (Emphasis added.)

. Section 366.10, Florida Statutes, (1985), provides: “As authorized by s. 3(b)(2), Art. V of the State Constitution, the Supreme Court shall review, upon petition, any action of the commission relating to rates or service of utilities providing electric or gas service.” (Emphasis added.)

. Section 366.06(1), Florida Statutes (1985), provides as follows:
(1) A public utility shall not, directly or indirectly, charge or receive any rate not on file with the commission for the particular class of service involved, and no change shall be made in any schedule. All applications for changes in rates shall be made to the commission in writing under rules and regulations prescribed, and the commission shall have the authority to determine and fix fair, just, and reasonable rates that may be requested, demanded, charged, or collected by any public utility for its service. The commission shall investigate and determine the actual legitimate costs of the property of each utility company, actually used and useful in the public service, and shall keep a current record of the net investment of each public utility company in such property which value, as determined by the commission, shall be used for ratemaking purposes and shall be the money honestly and prudently invested by the public utility company in such property used and useful in serving the public, less accrued depreciation, and shall not include any goodwill or going-concern value or franchise value in excess of payment made therefor. In fixing fair, just, and reasonable rates for each customer class, the commission shall, to the extent practicable, consider the cost of providing service to the class, as well as the rate history, value of service, and experience of the utility; the consumption and load characteristics of the various classes of customers; and public acceptance of rate structures.

 Note: This figure does not include Miller Gas’s current investment of $7,783 to serve the water pump; and